634 F.2d 1273
 24 Fair Empl.Prac.Cas. 714,
24 Empl. Prac. Dec. P 31,356
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
SAFEWAY STORES, INCORPORATED, Defendant-Appellee and Cross-Appellant,
and
Retail Clerks Union, Local No. 7; Butcher Workmen of North
America, AFL-CIO, Local No. 634; The International Union of
Operating Engineers, Local Union No. 1; Delivery Drivers,
Warehousemen and Helpers, Local Union No. 435; Milk Drivers
and Dairy Employees Local No. 537; Warehouse and
Distribution Employees Union, Local No. 452; Bakery Wagon
Drivers and Salesmens Local Union No. 219; and District
Lodge No. 86, International Association of Machinists and
Aerospace Workers, Rule 19(a)(2) Defendants,
and
Daniel Crespin, Claimant-Appellant and Cross-Appellee.
 Nos. 79-1189, 79-1190.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted May 5, 1980.
Decided Nov. 17, 1980.
 
 Gregory A. Eurich and Deborah J. Friedman, of Holland & Hart, Denver, Colo., for defendant-appellee and cross-appellant.
 Paul A. Baca, Denver, Colo., for claimant-appellant and cross-appellee.
 Before SETH, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 Introductory Facts and Proceedings
 
 1
 The above captioned cause is brought on behalf of Daniel Crespin, a Spanish surnamed American citizen. The appeal is from the judgment of the United States District Court for the District of Colorado, The Honorable Sherman G. Finesilver, Judge. Safeway Stores has filed a cross-appeal. The case is an employment discrimination action which arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000a et seq. Also involved are the equitable remedies which are available following the report of a special master. As a result of a stipulated submission to the master, two extensive hearings before the special master, followed by a careful review and supplement of the master's reports by the district court, the issue of liability is no longer a question. The question is whether the trial court erred in ruling out the front pay and limiting the back pay which was recommended by the master as a result of the discrimination which was determined to exist.
 
 
 2
 The evidence established that Crespin was a long time employee of Safeway. His employment dated back to 1962. He was first hired as an order clerk and forklift operator in Safeway's Denver warehouse.
 
 
 3
 Crespin had had a long time interest in working as a carpenter and as early as 1969 he advised his superintendent of this fact, and told him that this had been his second vocation for a long period of time, and that he wished to transfer to carpentry work in order to obtain a higher paying position. Crespin made his wishes known to several Safeway officials. He was advised by Safeway that a written application was unnecessary, but that he would be considered when the sole carpenter position became vacant. The individual in charge of the carpentry position was Mr. Schlosser, who was the head of the design and construction department. Mr. Schlosser and other Safeway personnel were notified of Crespin being an applicant for the job. Indeed, a memorandum was written on July 18, 1973. In it the employee relations manager advised Schlosser of the fact. Schlosser responded to the memorandum on July 24, 1973. He stated that Crespin would be considered for the position at the end of 1974, when the current occupant was scheduled to retire.
 
 
 4
 A carpentry job was filled in March, 1974, long before the occupant of the position retired. A second carpenter, a Caucasian, was hired at the express request of Schlosser. Crespin was given no consideration for the job. Schlosser's reason was that Crespin was not a member of the carpenters' union, a fact of which Schlosser had been aware since 1969, when it became a part of the collective bargaining agreement between Safeway and the carpenters' union. The requirement of the agreement was that the members of the union would receive first opportunity to be referred for filling Safeway's requirements for the carpenter opening.[1]
 
 
 5
 On November 29, 1974, Crespin filed a complaint with the Equal Employment Opportunity Commission (EEOC). The complaint alleged discrimination.[2] He also commenced work toward a degree of Associate of Arts in Carpentry at a local college. He received straight A's in carpentry and engineering courses.
 
 
 6
 On November 5, 1975, while the Crespin complaint was pending with the EEOC, that body brought a class action naming Safeway Stores as a defendant. Later certain labor unions were added as parties defendant (pursuant to Rule 19(a) (2)). Safeway was charged with engaging in unlawful employment practices in its manufacturing, distribution and retail operations in the Denver Metropolitan area. Included in the alleged discriminatory practices were:
 
 
 7
 Failure to train Spanish surnamed and Black Americans;
 
 
 8
 Maintaining terms and conditions of employment which had an adverse effect on Spanish surnamed and Black Americans;
 
 
 9
 Causing the constructive discharge of Spanish surnamed and Black Americans;
 
 
 10
 Failure to promote Spanish surnamed Americans.
 
 
 11
 On September 29, 1976, the subject matter or merits of the district court class action was the subject of a consent decree which obviated a trial on most of the issues.[3]
 
 
 12
 In the consent decree, Safeway promised to henceforth refrain from engaging in stipulated discriminatory practices, and Safeway undertook to henceforth enter into a detailed affirmative action program in its recruitment, hiring, training, retail management training, performance evaluation, promotion, transfer, discharge and discipline practices.
 
 
 13
 The decree also called for the appointment of a special master to hear and determine the charges of all individual complaints.
 
 
 14
 Each of the individual complainants, including Crespin, was to receive personal notice that each had the opportunity to submit his or her claim to the master for resolution by the special master in accordance with a specified procedure which called for full hearings, findings of fact, conclusions of law by the master pursuant to federal law, and submission of the report of the special master to the district court for approval, modification, or amendment. All of the proceedings looked to the entry following the modification and ultimate approval of the judge of a final appealable judgment. This was all to be subject to the Federal Rules of Civil Procedure.
 
 
 15
 The consent decree provided further (In Paragraphs G, H and I):
 
 
 16
 G. With respect to any claim which is sustained by the master, the master shall have the power to order any one or more of the following:
 
 
 17
 1. To make an award ordering that the charging party be hired or reinstated to the next available job opening in the facility or department from which the charging party was discharged, constructively or otherwise, or to which the charging party was refused hire.
 
 
 18
 2. To make an award ordering that the charging party's seniority be adjusted to that seniority which the charging party would have had but for the alleged discrimination.
 
 
 19
 3. To make an award of back pay.
 
 
 20
 H. All periods of limitation applicable under federal or state law shall be applied by the master, including limitations on back pay specified in Title VII or otherwise.
 
 
 21
 I. With respect to any charging party who receives a final award of back pay, the master may also award to said charging party reasonable attorneys' fees incurred in the resolution of the claim, if any.
 
 
 22
 Crespin elected to submit his claim in accordance with the outlined procedure. On February 7, 1977, following a hearing on the merits, the master found, on October 11, 1977, that due to Crespin's continued efforts over five years to communicate his intense interest in the carpenter position,
 
 
 23
 Schlosser's failure to advise claimant of the necessity of union membership and referral for the job of carpenter under all of the circumstances must be viewed as a willful and deliberate omission of managerial duty. Schlosser represented to claimant that no formal job application or interview was necessary because he would remember claimant's interest and consider him. Schlosser represented to management that claimant would be considered to replace Nobel. But when authorization for hiring was approved a relatively short time thereafter, Schlosser neither advised claimant of the fact nor considered claimant for the job. Schlosser had lulled claimant into inaction and effectively precluded him from competing for the position.
 
 The Master's Recommendation
 
 24
 The master's determination was that a violation of Title VII had occurred. His findings were adopted by the district court in its opinion and order granting Crespin relief on his claim. This latter is dated November 16, 1977. The judge added: "Because of Safeway's failure to inform plaintiff of transfer/promotion requirements, he was precluded from consideration for the transfer/promotion." The master was ordered to conduct a further hearing to determine an appropriate remedy.
 
 
 25
 Prior to this, in June of 1977, Safeway found it necessary to employ a second carpenter. It posted a notice informing its employees of the opening and its requirements, which included not only union membership, but fifteen years experience. Crespin joined the carpenters' union and applied for the job, but was rejected. After that, on March 31, 1978, a second hearing was held before the master. Evidence of the June, 1977 opening was then presented to the master. He issued his report on August 13, 1978. This was filed on August 21, 1978. He found that the person who was responsible for filling the June, 1977 opening was Schlosser, "the same person who had earlier practiced discrimination against claimant and he was subsequently responsible for establishing the requirement of 15 years' experience for the carpenter position." He further found the job was filled by a non-employee, even though the company had a policy of promotion from within. Also, he found that the Safeway defense that a better qualified individual was selected to fill the opening, was not "legitimate, non-discriminatory and bona fide", citing Sabol v. Snyder, 524 F.2d 1009 (10th Cir. 1975).
 
 
 26
 The master further determined that the 15 years' experience requirement was not necessary to the job, and served no useful purpose to Safeway. "It appears designed to exclude certain qualified carpenters, and under the totality of circumstances of this case, it appears to have been established for no purpose except to deprive claimant of the job he long sought, and was qualified to perform, because of his national origin."
 
 
 27
 The master's recommendation was that Safeway be directed to promote Crespin to a position in the carpentry shop in a position commensurate with that filled in 1974. His further recommendation was that Crespin be awarded back pay from the time he would have been employed at union carpenter wages, but for the unlawful discrimination, from March 11, 1974 "until the date of his installment in that position by defendant". Safeway was allowed to mitigate this back pay award in the amount of Crespin's interim earnings when employed by Safeway. Also recommended was that Crespin be awarded seniority in his position as of March 11, 1974, and further, that Crespin be allowed costs and attorneys' fees.
 
 The Trial Court's Decision
 
 28
 The trial court agreed entirely with the master's findings of fact, and particularly with the recommendation that Crespin be installed in a carpenter's job. The judge said he could find no distinction between a failure to consider and a failure to hire. The court considered significant the fact that the company had failed to inform Crespin of the necessity for joining the union. Further, the court found that "the record clearly shows that he was fully qualified to do this job." The trial court noted that Safeway had a policy of promoting from within the organization; that this was brought out by Mr. Schlosser, who was in the forefront of various discriminatory acts. Instatement was declared by the court to be the proper remedy for individual claims such as the one which was being tried, citing Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396. But the court noted, in addition, that it was empowered to grant such relief as was necessary to make the claimant whole; that is to recreate the conditions that would have existed had there been no discrimination.
 
 
 29
 The court also agreed with the master's recommendation that the claimant was entitled to an award of back pay; however, the back pay award was held by the trial court to be due from June 20, 1977 only. Finally, the court stated that it agreed with the fact that management's repeated failure to inform claimant of the requirement of union membership constituted willful and deliberate discrimination based upon claimant's national origin. However, the court turned around at that very time and in that same paragraph and stated that the next carpenter's job opening was in June, 1977; that this was the first position in which the claimant could have been placed following the 1974 discrimination. We thus have the anomalous situation in which the trial court found that Safeway discriminated against Crespin by denying him a job to which he was entitled in 1974, and nevertheless held that the position opening in 1977 was the first in which claimant could have been placed following the 1974 discrimination. The trial court's conclusion was that the claimant was entitled to an award of back pay and seniority benefits running from June 20, 1977. We reiterate that the 1977 position was the first opening in which the trial court found it could have ordered claimant installed following the 1974 discrimination. Then the court reached its conclusion "upon balancing the factors in this case in our efforts to be fair and equitable to the parties, we find that claimant is entitled to an award of back pay and seniority benefits since June 20, 1977."
 
 
 30
 The master's award had reached a conclusion opposite to that reached by the trial court on the effective date question. The summary of the master's award is contained in his August 13, 1978 opinion and reads as follows:
 
 
 31
 In summary, the master believes that claimant is entitled to a carpenter's position in the defendant's carpenter's shop, with seniority and all back pay benefits running forward from March 11, 1974. The back pay to which claimant is entitled is that amount he would have received in the carpenter's position, less the amount he did receive from Safeway for comparable work time, from March 11, 1974, to the date he is instated in the carpenter's job. Claimant is entitled to receive interest on the back pay award at 8% per annum from the date of the final opinion of the court, November 16, 1977, to the time the amount of back pay is actually paid. Colo.Rev.Stat.1973, Secs. 5-12-101, 13-21-101; 28 U.S.C. Sec. 1961. And, pursuant to Sec. 706(k) of the Civil Rights Act of 1964, claimant is entitled to costs and attorney's fees in amounts to be determined on receipt of further evidence.
 
 The Contentions of Crespin on Appeal
 
 32
 Crespin maintains that the trial court erred:
 
 
 33
 1. In determining that the date of commencement back pay remedies and seniority benefits was June 20, 1977 (which was the date Safeway opened a carpenter position). He argues that March 11, 1974, the date that Safeway filled the first opening and rejected him in a discriminatory way is the appropriate date. The trial court determined that the 1977 position was the first carpenter's position open to Crespin following the 1974 act of discrimination.
 
 
 34
 2. In concluding that "front pay" should not be awarded from the date of judgment, November 22, 1978, until the date that Crespin is installed in a carpenter's position on the ground the consent decree did not allow "front pay" relief to be granted.
 
 The Contentions of Safeway on Cross Appeal
 
 35
 Safeway raises its own issues on cross appeal. It contends that the trial court erred:
 
 
 36
 1. In failing to give adequate weight to the articulated reasons for failing to hire Crespin for the 1974 carpenter's job opening; that Crespin was not then eligible for the job since he was not a member of the carpenter's union; that this would have been a violation of the hiring hall agreement.
 
 
 37
 2. In failing to conclude that Crespin did not carry his burden of proof that the reason given by Safeway was a mere pretext.
 
 
 38
 3. In considering Crespin's charges as having been filed in time to avoid the 180 day filing requirement of Sec. 2000e-5(e).
 
 
 39
 4. In failing to consider that Safeway allegedly modified its hiring procedures in order to alleviate the necessity for granting any remedy to Crespin.
 
 
 40
 5. In awarding back pay and reinstatement to a carpenter's job, since these remedies are inappropriate under the circumstances of this case.
 
 
 41
 6. In failing to join an indispensable party, the carpenter's union, in view of the collective bargaining agreement.
 
 
 42
 7. In failing to hold that Crespin was required in law to seek a carpenter's job elsewhere in order to mitigate his damages.
 
 
 43
 I. Did the Trial Court Err in Determining that the Date of Commencement of the Remedies, Including the Seniority Benefits, to be June 20, 1977, the Date that Safeway created an Assistant Carpenter Position Requiring 15 Years' Experience, Instead of November, 1974, the Date Safeway Filled the Carpenter Position and Promoted Chambers to the Carpenter Position?
 
 
 44
 It is unquestionably a violation of Title VII, supra, to refuse employment or promotion on the basis of race or national origin. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
 
 
 45
 The consent decree which has given rise to this action, while it did not acknowledge any individual violation, nevertheless stated:
 
 
 46
 9. It shall be the burden of the charging party to make an evidentiary showing that he or she is a member of the affected class as defined at Section I., C. 4 herein, and that she or he was not hired or was otherwise adversely affected by personnel action of the company. It shall then be the burden of the company to make an evidentiary showing that the reason for the failure to hire or other adverse personnel action was other than the charging party's membership in the affected class.
 
 
 47
 The above stipulation of EEOC and Safeway establishes first of all that the individually aggrieved party retains the burden of proof to establish that he is a member of the class and has suffered discrimination. Safeway then has the burden of establishing that the failure to hire was for a reason other than membership in the affected class.
 
 
 48
 So it is not quite the situation of the ordinary lawsuit in which the parties are writing on a clean slate.
 
 
 49
 We have held, in accordance with generally accepted doctrine, that the articulated reasons for the conduct of a pattern or practice by an employer is a matter for the trier of the facts. EEOC v. Sandia Corporation, 639 F.2d 600 (10th Cir., 1980). Moreover, an individual employee who has established a prima facie case need not present further evidence that the reason articulated by the employer explaining the alleged discriminatory acts are incredible or pretextual. Id. The burden of the individual employee does not shift. It remains with him or her. It is the risk of non-persuasion.
 
 
 50
 In the case before us Safeway's articulated reason for its failure to hire Crespin the first time around in 1974 (when the then carpenter retired) was that Crespin was not then a member of the carpenters' union. The act of unlawful discrimination grew out of Safeway's knowledge that Crespin was counting on being considered for the job. He had made known his interest to all who would listen and it was the subject of a Safeway inter-office memorandum. With all of that, even though the general manager had assured Crespin that he would be considered, he was not told of the need for joining the union and was not given the slightest consideration. This conduct on the part of Safeway, culminating in failure to give him a chance to join the union, was a knowing and deliberate act. Safeway's attempted reliance on the hiring hall provision of the collective bargaining agreement is, to say the least, hollow. There was sufficient evidence to support the finding of the master that Crespin had established a prima facie case. Safeway did not have a credible explanation.[4]
 
 
 51
 In the factual statement set forth above, we brought out the fact that the trial judge not only approved and adopted the special master's findings, but the trial court embraced those findings and made findings of its own that jibed with those of the master. The trial court unequivocally found that Safeway ignored Crespin when the time came to fill the job of the retiring Mr. Nobel in 1974. Safeway, in addition, deliberately misled Crespin by failing to notify him of the fact that he had to be a member of the carpenters' union, and more importantly, failed to notify him that an opening had occurred for which he could apply. The trial judge did not deny that this was a violation of the Act. He sought, however, to render an order he deemed to be a more equitable decision. The reason that was given by the trial court, namely, that no opening existed, in not valid. There was, indeed, an opening; in fact, two openings. An assistant carpenter was appointed prior to Nobel's effective retirement. This assistant, Mr. Chambers, was the heir-apparent to the position. It cannot be said that there was no opening. Otherwise, it would be very easy to evade the Act. All one would have to do would be to appoint an understudy and lock him in. Plainly, this cannot be allowed to be a cover-up of a violation of the Act. And it even more does not excuse the court from the task of fashioning a remedy, in this instance, the award of back pay to the date in November of 1974, when Crespin did not receive the job; when it was given to Chambers. This was the act of discrimination as a result of which Crespin became an aggrieved person entitled to compensation. The master and the trial court were correct in their findings of fact and in general in the application of the standards which were equitable. Both the master and the trial court applied the correct standards with respect to the burden of proof in this type of case. Their findings were, moreover, fully supported by the evidence in the case. However, the trial court erred in fixing the date of entitlement to damages in 1977. It should have gone back to November, 1974.
 
 
 52
 II. Did the Trial Court Err in Concluding That Crespin is Not Entitled to So-Called "Front Pay" From the Date of Judgment, November 22, 1978, Until the Date That Crespin Became Installed in the Carpenter's Job?
 
 
 53
 The ultimate issue is whether the trial court was correct in denying relief for the reason given, i. e., that it was outside the scope of the consent decree. The Supreme Court has given approval to the concept of an award of "front pay" in discrimination actions. Franks v. Bowman Transportation, Inc., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444. Also, in Fitzgerald v. Sirloin Stockade, 624 F.2d 945 (10th Cir. 1980), this court approved an award of front pay as compensation in lieu of reinstatement. Similarly, in United States v. Lee Way Motor Freight, Inc., 625 F.2d 918, 21 E.P.D. Par. 30,286 (10th Cir. 1979), we ruled that the trial court should, at least, consider the question of front pay pending the claimants becoming able to secure their rightful place. The Fourth Circuit, in Hill v. Western Electric Company, Inc., 596 F.2d 99 (4th Cir. 1979), in the opinion of Chief Judge Haynesworth, set forth standards determining entitlement to front pay. The court mentioned that the claimant had the burden of proof that he or she sought a position or would have sought it had not an application been excused in accordance with the International Brotherhood of Teamsters v. United States, supra. The applicant must establish that he or she is qualified in terms of skills and physical strength and finally would have accepted the position had it been offered, and that there was an available position which was filled by someone else in conformity with the discriminatory policy. Certainly these standards are fulfilled in this case. Yet, although the trial court accepted the recommendations of the master that Crespin be awarded front pay or pay from the date of judgment until he is instated in his rightful place, this was rejected upon motion to amend the judgment. The only ground that the trial court cited was that the master lacked authority to make an award of front pay. The conclusion was ill-founded. The master doesn't award anything anyway; the judge does it. See Rule 53, Federal Rules of Civil Procedure. The master merely recommends. It was said, however, that the recommendation of the master was beyond the scope of the consent decree. The district court was not restricted by such consent decree, anyway. It was certainly free to follow the recommendations of the master or act on its own for that matter. An individual cannot be deprived in this manner of that which is rightfully his. See White v. Carolina Paperboard Corp., 564 F.2d 1073 (4th Cir. 1979). In the White case the court said about back pay:
 
 
 54
 Back pay in Title VII cases may be supplemented, in the district court's discretion, "by an award equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of judgment and the time when the employee can assume his new position". 564 F.2d 1091 (Emphasis added.)
 
 
 55
 The consent decree, as we view it, undertook to limit the scope of the hearing before the master. It did not, however, constitute a deprivation of remedies due to the individual claimant who was not a party to the consent, and it certainly did not limit the authority or power of the trial judge to act in accordance with the law. Although the cases discuss the award of front and back pay as being in the trial court's discretion, the United States Supreme Court has made it clear that this discretion must be exercised so to make possible the fashioning of the most complete relief possible. See Albemarle Paper Company v. Moody, 422 U.S. 405 at 421, 95 S.Ct. 2362 at 2373, 45 L.Ed.2d 280 (1975). The consent decree as we view it was to outline the scope of the master's inquiry. It did not serve to limit the trial court's powers in relation to an individual claimant as distinguished from the EEOC against Safeway.
 
 
 56
 The cause must be remanded for inclusion in the judgment of compensation from the time of the judgment to the date of execution by instatement in a carpenter job, in light of the views expressed above.
 
 Safeway's Points on Appeal
 
 57
 I. Sufficiency of the Evidence and Alleged Failure of the Court to Give Weight to the Articulated Reasons for Its Failure to Hire Crespin.
 
 
 58
 This case was considered in depth by the master in two stages. The first consideration had to do with the evidence in support of the allegations of discrimination, and the second concern was the determination of appropriate remedies. Following intensive hearings before the master the court gave the case in-depth attention. It does not appear that either of these hearers of the facts neglected the articulated reasons of Safeway. The primary articulated reason of Safeway was that Crespin was ineligible because of not being a member of the union, a requirement which Safeway kept from him; at the same time Chambers was sought out by Mr. Schlosser. So this is a grossly inadequate articulated justification. For Safeway to point out the good qualities of Chambers is, at best, an after-the-fact attempt to justify Schlosser's conduct.
 
 
 59
 As to the remedies: Both the master and the judge approached the case in the first instance with a view to provide remedies which, to the extent possible, would make Crespin whole. Albemarle Paper Co. v. Moody, supra; Franks v. Bowman Transportation Company, Inc., supra. This court also has recognized that once discriminatory conduct has been established with the resulting disregard by an employer of an otherwise qualified employee for promotion or transfer demands remedies which will make the employee whole. Fitzgerald v. Sirloin Stockade, Inc., supra; Rich v. Martin Marietta Corp., 522 F.2d 333 (10th Cir. 1975); See International Brotherhood of Teamsters v. United States, supra.
 
 
 60
 II. Did the Trial Court Err, as Safeway Argues, in Not Holding as a Matter of Law That the Evidence Presented by Crespin Was Not Sufficient to Sustain the Burden of Proof?
 
 
 61
 We must hold that the court did not err. First, evidence was persuasive. This employee was shown by the evidence to have been extraordinarily worthy. He was with Safeway for a number of years, and continues to work there. So he is steadfast. He was constantly seeking to improve himself. He attended the Community College and sought a degree in carpentry and engineering from that institution. Also he made good grades. It would appear that he was unsuspecting that Safeway was misleading him through Schlosser by pretending to take seriously his ambition to gain acceptance as a carpenter.
 
 
 62
 All the time Schlosser had Mr. Chambers in mind for the job. We have heretofore considered Safeway's articulated reasons for rejecting Crespin, and we agree with the court below that this was unconvincing. So it was unnecessary for the claimant to take up the cudgel following Safeway's presentation of its evidence, whereas here the Safeway evidence does not make an impact. If the evidence of Safeway appears pretextual after it has been presented, it is unnecessary for the plaintiff to offer evidence in rebuttal.
 
 
 63
 The main articulated reason given by Safeway for failing to hire Crespin for the carpenter job in 1974 was that he was not a member of the carpenters' union. We need not rehash the point in detail that Safeway, although aware that Crespin was a long-time applicant for the job, did not tell him there was about to be an opening, or that he had to be a member of the carpenters' union. Both of these acts were found to have been discriminatory. See Rowe v. General Motors Corp., 457 F.2d 348, 359 (5th Cir. 1972), and cf. Cedillo v. Ironworkers Local 1, 603 F.2d 7, 20 E.P.D. Par. 30,135 (7th Cir. 1979). It would have been bad enough if Safeway had refrained from notifying Crespin of the upcoming opening; they had told him that he would be considered for the position when it became open. Safeway offered no reason for this course of conduct. It did not really articulate any reason and, indeed, the hiring hall element was not an issue at trial. There was ample evidence in support of the finding that Crespin established a prima facie case. Thus, the McDonnell Douglas procedural formula did not really come into play. Safeway's justification in this court has been that Mr. Chambers was far better qualified than Crespin for the job; that Chambers had approximately 38 years experience as a carpenter; that he had other skills and accomplishments, as well. As to the length of Chambers' service, it must be pointed out that this is subject to the law of diminishing returns, but, in any event, Safeway, in its eagerness to hire Chambers, did not even consider Crespin's qualifications. Chambers had a clear track.
 
 
 64
 There is no apparent basis then for setting aside the trial court's findings of fact.
 
 
 65
 III. Did the Trial Court Err in Not Dismissing the Action as Having Been Untimely Filed in View of the 180-Day Limitation Set Forth in 42 U.S.C., Sec. 2000e-5(e) ?
 
 
 66
 Neither the master or the trial court reached a conclusion on this issue and undoubtedly this was because Safeway did not press it at trial, although it was raised in a motion to alter or amend judgment. The record does not show that it was an issue at trial. It was raised on the basis of the master's consideration of events occurring before 1970. It should have been raised before the master or with objections to the master's report, and it is difficult considering it here. We do, however, point out that the filing by Crespin was on November 29, 1974. Chambers was hired on March 11, 1974, but this was a hiring of an assistant. Mr. Nobel, the sole carpenter until March 11, 1974, did not retire until November, 1974. It would appear that the original act of hiring Chambers as an assistant was only the start of the discrimination. The final act or culmination of the discrimination was in November, 1974, at which time Nobel took his retirement. It was only then that the discriminatory act became fully apparent. The 180-day requirement was met. The discriminatory act started in March of 1974, and culminated in November, 1974, when Mr. Nobel retired, and Chambers became the full-fledged carpenter. The statute of limitations was not set in motion until the completion of that act.
 
 
 67
 IV. Was it Error for the Trial Court, Even Though it Found Liability in Favor of Crespin, to Fashion a Remedy?
 
 
 68
 Safeway maintains that no remedy should have been awarded, even if the court did find liability. Safeway urges that Crespin would be placed in the position which is rightfully his except for the discrimination if he were merely considered for the next opening for a carpenter. Safeway maintains that the only injury that Crespin suffered here resulted from Safeway's failure to advise him of the job requirements. The argument continues that Crespin now is advised of the requirements and thus has achieved his rightful place; all that he is entitled to is consideration. He was considered for the next job opening in 1977, they say, but a better man was chosen. So, Safeway continues, he has had his just due and no further remedy is necessary. They also say that since he filed no further charges with the EEOC after being rejected for the 1977 opening, there was sufficient proof that all previous discriminatory aspects of Safeway's hiring procedures had been eliminated. This argument has no substance. One reason is that Safeway created an unlawful impediment, the 15 years experience requirement, which was used to prevent Crespin from being in the position to get the 1977 assistant's job. Crespin was ruled out because of this newly created requirement. Safeway also ignores the fact that the job requirement was established by the same manager, Schlosser, who was responsible for the original discrimination and subsequent discrimination, as well. The master indicated that the additional requirement of 15 years experience appeared to have been designed to preclude Crespin and hence, was not legitimate and was discriminatory. See Sabol v. Snyder, supra. All these matters were before the master at the second or remedial phase of the trial.
 
 
 69
 The trial court, upon receiving the master's report, made its own evaluation of what was needed to remedy the discrimination. In the court's order of November 10, 1978 it made passing mention of the actions of Safeway in establishing an additional discriminatory requirement for the 1977 job, namely, the 15 years experience. It did not distinguish between the failure to consider and failure to hire, as was urged by Safeway. Rather, it agreed with the master's recommendation that Crespin was to be instated in a carpenter job, was to be awarded back pay and seniority benefits, together with attorneys' fees. The trial court then modified the master's recommendation that the award of back pay and seniority benefits should commence running from June 20, 1977 because the position prior to 1977 was not open. We have already discussed this, and disagreed with this analysis. The proper remedy is instatement in the next available position in "failure to hire" cases. See Teamsters v. United States, supra; Albemarle Paper Co. v. Moody, supra. Similarly, back pay and seniority benefits commensurate therewith are also appropriate, as is compensation until the opening occurs. Fitzgerald v. Sirloin Stockade, Inc., supra; United States v. Lee Way Motor Freight, Inc., supra.
 
 
 70
 From what we have said, it is apparent that Safeway's contention that it was error to give any remedy to Crespin is wholly lacking in merit. To accept Safeway's contention would be to hold that Safeway is to receive compensation for changing its ways. No doubt they have received forgiveness in a general way, but the law is not empowered to forgive to the extent of erasing and forgetting an inflicted injury. The aggrieved party is the only one who is so empowered. A clean bill of health is too much for Safeway to expect and Safeway should be reminded that as Emerson so aptly said, "The only reward of virtue is virtue." Safeway is, of course, to be commended for its turn around, and the recognition of the claim of Crespin, which has its origin in another era, in no way detracts from Safeway's changed ways.
 
 
 71
 V. Is the Carpenters' Union an Indispensable Party?
 
 
 72
 Safeway's position on this is that to order it to hire Crespin as a carpenter would require it to violate its collective bargaining agreement with the union. This contention is, however, now moot because Crespin joined the union once it became apparent that it was appropriate for him to do so. So this point is actually moot at the present time. Moreover, it cannot be said that the union was a party to the discrimination. There is no evidence in the record that says it was, and we are not disposed to speculate on that. cf. Gilmore v. Kansas City Terminal Railroad Co., 509 F.2d 48. In the Gilmore case, there was evidence that the union itself had discriminated and the court said that they may have been partially responsible for the absence of minority persons with the requisite training for the supervisory positions that were there involved. The court said that the practices were such that they could not be eliminated without the joinder. Such is not the situation in this case because the practices have all been eliminated, so we are told.
 
 
 73
 VI. Did the Court Err in Holding that Crespin was not Compelled, in Order to Mitigate Damages, to Seek a Carpenter Position With Some Other Company?
 
 
 74
 We conclude that this point is also lacking in merit. The master's recommendation was that reasonable diligence would not require claimant to have sought employment elsewhere. He remained in the employ of defendant, secure in a long-term position. Such conduct was prudent under the circumstances. The trial court agreed with this. It noted that Crespin had over 12 years service at Safeway, in 1974, and that there was no evidence that full-time carpentry work was available in 1974 outside of Safeway. The evidence showed that he had acceptance as a steady worker at Safeway, and so the kind of mitigation Safeway seeks to impose is not relevant. The trial court recognized the need for mitigation in terms of deduction of Crespin's salary as a warehouse order clerk and forklift operator from the damages derived from his not being given the carpenter position, and this is the extent of the mitigation that is appropriate.
 
 
 75
 With the exceptions above noted, that is modification by the trial court of the date of the award to November, 1974, together with the award of front pay pending the obtaining of a carpenter position by Crespin, the judgment is affirmed. The cause is remanded for the purpose of modification of the award in accordance with the foregoing opinion.
 
 
 
 [1]
 The special master, Professor John Phillip Linn, of the University of Denver College of Law, made detailed findings. He found that neither Schlosser, whose duties included the hiring of carpenters, nor any other member of Safeway's management, ever informed Crespin of a requirement of union membership being a prerequisite to his transfer to the carpentry job. The master found it, "reasonably certain that if claimant had been advised (in 1969, when rumors of the company carpenter's retirement were circulating) that the carpenters' union would refer applicants to defendant to fill the carpenter job, claimant would have taken the necessary action to become a union member and to be on the union's referral list."
 
 
 [2]
 Crespin's EEOC complaint form, entitled "Charge of Discrimination", initially listed "race or color" as the cause of discrimination, rather than "national origin", a matter of no consequence now being brought to our attention. It listed Safeway as the employer and Schlosser as the employee who discriminated against him. The explanation given by Crespin at that time succinctly summarizes the later findings of the master:
 "Explain what unfair thing was done to you and how other persons were treated differently. Understanding that this statement is for the use of the United States Equal Employment Opportunity Commission, I hereby certify: 'In 1969 I verbally applied for a carpenter's position for Safeway Stores. At that time, I submitted photos of some of my work. I was told then that the job was filled by a Mr. Nobel. Upon inquiry about the possibility of being an assistant to him I was informed there was no need for one. I was told thereafter that he would retire in a "couple of years". Periodically I kept in touch in regards to the position opening up. Last summer I was told, in writing, I would be considered for the job when Mr. Nobel retired in late 1974. I was refused an interview at that time. Recently, I looked into the matter again and was informed that: 1) Mr. Nobel is retiring; 2) He has had an aide since March, 1974; 3) This aide will take over the job; 4) I would not get the job but if it should open up again I would be considered at that time. I was never informed that a carpenter's aide position had been created. I was never granted an interview, therefore, the company never bothered to find out if I was qualified for the position. I have worked for the company 12 1/2 years. I do carpentry and cabinet work on the side. Attached to this is the company's policy of equal opportunity typed in back of payroll checks recently.
 
 
 [3]
 This consent decree has been before this court in three prior cases, our Nos. 78-1136, 78-1137 and 78-1138
 
 
 [4]
 Safeway urges at length in its brief that the person hired for the 1974 carpenter's job, a Mr. Chambers, was far more qualified for the job than Crespin. It cites evidence that Chambers had approximately 38 years experience as a carpenter and other skills and accomplishments which, it is alleged, indicate Chambers possessed "immeasurably superior qualifications". The weight which the trier of fact gave to the evidence of these qualifications in not, however, in issue here, since there was evidence that Crespin was also qualified. The trier of fact is the arbiter of the legitimacy and credibility of the articulated reason advanced by the employer for the allegedly discriminatory act. EEOC v. Sandia Corporation, supra. See also Teamsters v. United States, 431 U.S. 324 at 358, 97 S.Ct. 1843 at 1866, 52 L.Ed.2d 396 (1977)