June 23, 2017

**Supreme Court**

No. 2014-281-Appeal.
No. 2014-282-Appeal.
(PC 04-6001)

| | | |
|---|---|---|
| Matthieu W. Yangambi | : | |
| v. | : | |
| Providence School Board et al. | : | |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2014-281-Appeal.
No. 2014-282-Appeal.
(PC 04-6001)
Dissent begins on Page 32)

Matthieu W. Yangambi               :

v.                                 :

Providence School Board et al.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Goldberg, for the Court.**  The parties in this case are before the Supreme Court on cross-appeals from a Superior Court judgment following a jury verdict in favor of the plaintiff, Matthieu W. Yangambi (plaintiff or Dr. Yangambi), on a single claim of employment discrimination based on national origin.  The defendants, the Providence School Board and the City of Providence (Providence or defendants), have challenged the Superior Court justice's jury instructions on several grounds and argue that the Superior Court justice: (1) applied an incorrect law concerning evidentiary presumptions in an employment discrimination case; (2) improperly weighed the evidence; and (3) invaded the province of the jury.  The defendants also contend that the Superior Court justice erred when she vacated the jury's finding that the plaintiff failed to mitigate his damages.  The plaintiff's cross-appeal arises from the denial of a motion for judgment as a matter of law on a separate count in the complaint that also alleged employment discrimination.  The plaintiff contends that the defendants failed to satisfy their burden of production, they did not articulate a nondiscriminatory reason for the adverse employment decision, and  therefore, the plaintiff was entitled to judgment as a matter of law.  For the reasons

- 1 -

discussed herein, all appeals are denied and dismissed, and the judgment of the Superior Court is affirmed.

**Facts and Travel**

Doctor Yangambi, who is of African descent, immigrated to this country from the Democratic Republic of the Congo (the Congo) and, the evidence disclosed, speaks English with a pronounced French accent. He graduated with a Bachelor's degree in biomedical sciences from the University of Kinshasa in the Congo. He was a full-time high school teacher in the Congo for two years and also taught high school science part-time in Gabon, a neighboring country, for three years. While in Gabon, Dr. Yangambi also worked in a supervisory capacity at a nephrology department for ten years, working with nursing students as they transitioned from academia to practice. Doctor Yangambi immigrated to the United States in February 1990.

In 1992, Dr. Yangambi began his teaching career with Providence as a substitute physics teacher at Hope High School.[1] In 1993, he was hired as a full-time biology and physiology teacher at Mount Pleasant High School (Mount Pleasant), where he currently is employed. In 1998, Dr. Yangambi received his Master's degree in administration from Providence College and his certification to be a middle or high school principal. In 2006, he earned a doctorate in educational leadership from Johnson & Wales University.

During the term of his employment, Dr. Yangambi applied for approximately forty[2] positions within the Providence School Department (the Department), but he was rejected every time. In 2003, Dr. Yangambi filed a charge of discrimination with the Rhode Island Commission for Human Rights (the commission), claiming that Providence had failed to promote him based

---

[1] Doctor Yangambi received his certification from Providence College to teach middle and high school biology, core sciences, and general science in January 1993.

[2] Doctor Yangambi was permitted to present evidence on ten of these positions.

on his national origin. On October 7, 2004, the commission issued a right to sue notice; and, on November 5, 2004, Dr. Yangambi filed an employment discrimination suit, charging that Providence violated the Fair Employment Practices Act (FEPA) and the Rhode Island Civil Rights Act (Civil Rights Act) by failing to promote him to numerous administrative positions based on his national origin. In November 2007, Dr. Yangambi filed an amended complaint, averring that Providence had again failed to promote him based not only on his national origin,[3] but also in retaliation for his claims of employment discrimination. The case was tried before a jury in March and April of 2014.[4]

This appeal is confined to two of the positions that were not awarded to Dr. Yangambi; each application was for an opening as assistant principal at Mount Pleasant—the first, in 2002 (2002 Position) and the second, in 2004 (2004 Position).

## 2002 Position

In May 2002, an opening was announced for the 2002 Position; the posting required that the applicant possess three years of teaching experience and a certification by the Rhode Island Department of Education (the Department of Education) for a secondary principal. Doctor Yangambi, who met these requirements, applied for the 2002 Position; however, he was not interviewed,[5] nor was he notified that he did not meet the minimum qualifications for the position. According to Gail Hareld (Hareld), a human resources administrator for Providence, applicants who met the minimum qualifications generally were forwarded to the hiring

---

[3] Doctor Yangambi also alleged racial discrimination in his complaint. But he stipulated before trial that he would not introduce allegations of racial discrimination at trial and would limit his allegations to national origin and retaliation discrimination.

[4] We have been provided with no explanation for the delay in this case.

[5] It was Dr. Yangambi's testimony that there were no interviews for this position; it simply was awarded to John Craig.

committee, and those who were not deemed qualified were notified by Providence. It is not contested that, in 2002, Dr. Yangambi met the teaching experience and requisite certification requirements established by the Department of Education. Specifically, Dr. Yangambi had approximately fifteen years of teaching experience, ten years of supervisory experience in a hospital setting, and had obtained a secondary principal certificate. He had been at Mount Pleasant since 1993. Nonetheless, Dr. Yangambi received neither an interview nor a rejection letter from Providence. The defendant offered no explanation for this circumstance.

The position was awarded to John Craig (Craig). Craig testified that, at the time of the posting, he was serving as acting assistant principal at Mount Pleasant and that he previously had served as an assistant principal in Johnston for approximately one-and-a-half years. Craig had fourteen years of teaching experience; and, in 1999, he received a Master's degree in administration from Providence College. He explained that he obtained his secondary principal certification shortly after earning his Master's degree. Specifically regarding the 2002 Position, Craig testified that, while working in Johnston, he was encouraged to contact the principal at Mount Pleasant at the time, Nancy Mullen (Principal Mullen), about an assistant principal vacancy; however, he understood that "it would only be an acting [position], and [by] taking that position [he] would be taking a risk of not getting the [permanent] position * * *." Although Craig testified at trial that he was interviewed for the position, this testimony conflicted with his deposition testimony in which he admitted that he was not interviewed. Nonetheless, Craig could not remember the names of anyone who conducted the interview but was confident that Principal Mullen did not participate. He recalled that the majority of members on the interview panel were from the human resources department. Craig's testimony that Principal Mullen did not participate in the interview is in conflict with Providence's hiring policies, as set forth by

Hareld and other witnesses, and that formed the basis of the defense in this case. That policy required administrators from the particular school to be involved in the interview process.[6]

Providence failed to produce evidence about who, if anyone, including Craig, was in fact interviewed in 2002, what name or names were forwarded to the Superintendent, who were the members of the interview committee, or how the candidates were ranked. Further, despite the irrefutable evidence that Dr. Yangambi met the qualifications for the 2002 Position, there was no testimony or other evidence produced that explained why Dr. Yangambi was not granted an interview for the 2002 Position.

Numerous witnesses testified on behalf of Providence and offered testimony about the general hiring procedures that were in place in Providence. According to Hareld,[7] the procedure required that an open position was to be posted—for a minimum of ten days—setting forth the minimum qualifications necessary for the position. Hareld testified that the names of applicants who met the minimum qualifications would be forwarded to the interview committee for an interview. The interview committee was composed of a range of individuals, depending on the type and location of the vacancy, and chaired by a chairperson, usually an administrator from the hiring school. Importantly, regardless of the position or the location, a Providence human resources representative and an equal employment opportunity (EEO) officer often served on each interview committee. Hareld explained that the members of the interview committee would pose questions, which were determined in advance, to each applicant and rate the response on a

---

[6] Doctor Yangambi testified that Principal Mullen had previously expressed to him that he "speak[s] French and [has] a deep voice, [and] when [he] speak[s] English people cannot understand what [he is] talking about." During her deposition, Principal Mullen denied making this statement.

[7] Although Hareld did not start working for Providence until 2003, her testimony is relevant as to the general hiring practices allegedly followed by Providence.

scale of one to five. After the scores were tallied, the names of the top two or three applicants were recommended to the Superintendent, who would forward his or her recommendation to Providence. Providence would then vote on whether to award the position to the recommended applicant.

Joyce O'Connor (O'Connor), Providence's EEO officer from 1986 to 2012,[8] also testified and corroborated Hareld's testimony about Providence's hiring practices.[9] Although O'Connor testified that one of her responsibilities as an EEO officer was "to see that basically the candidates were treated fairly during the interview * * *," she too could not offer any testimony about the 2002 interview committee, who was interviewed, or who was recommended to the Superintendent. Providence failed to produce any ranking sheets or other documentary evidence and was unable to identify the other candidates, if any, who were interviewed for the position. In the fall of 2003, Dr. Yangambi filed a complaint with the commission.

## 2004 Position

While Dr. Yangambi's complaint was pending before the commission, he applied for the 2004 Position of Assistant Principal at Mount Pleasant. This position included a closing date of April 2, 2004, with which Providence did not comply. Doctor Yangambi was not interviewed until June, more than two months after the expiration of the interview period and, notably, after the successful candidate became qualified. Providence's internal procedures required that interviews be held within ten days of the closing date of the posting. Hareld testified that "[i]t's not that [Providence doesn't] follow the procedure[,]" but that it is dependent "upon the availability of the applicants as well as the people on the interview committee." During this

---

[8] O'Connor did not begin scoring applicants until the 2007-2008 school year.

[9] Tomás Ramírez, Acting Assistant Superintendent for Human Resources and Labor Relations, also testified consistently regarding the hiring process that Providence utilized.

interregnum, the candidate, Michael Sollitto (Sollitto), who was awarded the position, who did not meet the minimum qualifications at the closing date, acquired the requisite certificates. Doctor Yangambi testified that although he met the minimum qualifications for the position—the same qualifications set forth for the 2002 Position—he was not awarded the position. Instead, Sollitto, a Mount Pleasant social studies teacher, who did not meet the minimum qualifications at the time he applied, was appointed. Sollitto testified that he first began working for Providence at Mount Pleasant in 1995 as a long-term substitute teacher. He was hired as a permanent teacher at Roger Williams Middle School in 1998 and transferred to Mount Pleasant in 1999. On April 2, 2004, when the application period closed, Sollitto had not yet obtained a Master's degree in administration and certification as a secondary principal. Sollitto clearly benefited from the fact that the interviews were postponed for at least two months. In April 2004, Sollitto was serving an internship at Mount Pleasant as part of his Master's degree curriculum requirements. He did not become credentialed until May 2004. Providence's departure from the internal promotional procedures favored Sollitto.

Again, Providence failed to produce any ranking sheets for the 2004 Position. There was no evidence about who was interviewed, save for Dr. Yangambi and Sollitto, or the number of candidates who were recommended to the Superintendent. O'Connor, who was the EEO officer, testified that she served on the interview committee for the 2004 Position but could recall almost nothing else and had no notes or documents. She could not recall where Dr. Yangambi ranked "unless [she] had seen the sheets"—which, of course, were not produced. According to O'Connor, she did not know that Dr. Yangambi was from the Congo; but she was also certain that the interview committee did not discuss Dr. Yangambi's national origin during the interview. Save for O'Connor's testimony, which generously can be characterized as stating

what she did not know and what the committee did not do, Providence failed to produce any evidence about what did occur; nor did Providence proffer any reason why Sollitto was selected for the 2004 Position over Dr. Yangambi.[10]

**Motion for Judgment as a Matter of Law**

At the close of the evidence, plaintiff moved for judgment as a matter of law for the counts relating to the 2002 Position and the 2004 Position, in accordance with Rule 50 of the Superior Court Rules of Civil Procedure. The basis for the Rule 50 motion centered on defendants' failure to meet their burden of production and to articulate a legitimate, nondiscriminatory reason for not promoting Dr. Yangambi. The Superior Court justice denied the Rule 50 motion, opining that:

> "if there [was] no evidence at all upon which the jury could conclude that there [was] a non-discriminatory reason for the employment action, then plaintiff would be entitled to judgment [as a matter of law]. However, in this case, there was at least some evidence that the candidates were ranked and that the highest ranking candidates were the ones who were recommended to the Superintendent. * * * For [the 2002 Position] there also [was] evidence that * * * Craig had better qualifications. * * * [A]lthough the defendant[s] did not articulate clear and specific non-discriminatory reasons for [their] failure to promote plaintiff to [the 2002 Position and 2004 Position], it did come forward with evidence to create questions of fact about the elements of plaintiff's claim for intentional discrimination.
>
> "The only thing defendants' failure to articulate a clear and specific non-discriminatory reason for its failure to promote did— the only thing that did was to give plaintiff the benefit of a rebuttable presumption. It didn't entitle plaintiff to judgment as a matter of law."

---

[10] Providence's failure to present any records regarding the 2004 Position, or witnesses with knowledge of the events, in the face of a pending complaint to the commission gives rise to the suspicion of mendacity recognized by the United States Supreme Court in St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). See McGarry v. Pielech, 47 A.3d 271, 281-82 (R.I. 2012); Casey v. Town of Portsmouth, 861 A.2d 1032, 1038 (R.I. 2004).

Recognizing that many of the cases presented by the parties arose in the context of summary judgment, the Superior Court justice held that, at trial, a plaintiff always bears the burden of persuasion in employment discrimination cases. The Superior Court justice also declared that a rebuttable presumption of discrimination arises when a plaintiff proves his or her prima facie case—that is "(1) he is a member of the protected class[;] * * * (2) he applied for an open position; (3) he was not selected; and (4) the employer 'filled the position by hiring another individual with similar qualifications.'" McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012) (quoting Casey v. Town of Portsmouth, 861 A.2d 1032, 1037 (R.I. 2004)).

The plaintiff also moved for judgment as a matter of law on defendants' affirmative defense of failure to mitigate damages, contending that this defense hinged on Dr. Yangambi's failure to apply to comparable positions outside of the City of Providence, even though defendants did not present any evidence that comparable positions actually existed. The Superior Court justice reserved on the motion, but declared that she "would be surprised if the jury came back and said [that plaintiff] failed to mitigate [damages]."

**Jury Instructions**

The burden-shifting paradigm set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) was the subject of great debate in this case. The defendants vigorously opposed the Superior Court justice's conclusion, at the close of the evidence, that defendants were required to produce direct evidence of a nondiscriminatory reason for their failure to promote plaintiff to the 2002 Position and the 2004 Position. Significantly, with respect to several counts in this case, defendants did produce evidence of a nondiscriminatory reason for their adverse employment decision. The Superior Court justice

- 9 -

concluded that defendants failed to meet this burden only with respect to the 2002 Position and the 2004 Position.

The defendants objected to the Superior Court justice's proposed jury instruction on the law of presumptions as applied to the 2002 Position and the 2004 Position—the only counts to which the Superior Court justice applied the burden-shifting paradigm—arguing that the Superior Court justice essentially took the issue away from the jury.[11]   Over this objection, the Superior Court justice gave a lengthy and detailed instruction to the jury on the 2002 Position and the 2004 Position and the law of presumptions.  Because we are required to review jury instructions in their entirety and do not consider a selected portion or sentence, see State v. Long, 61 A.3d 439, 445 (R.I. 2013), we set forth the instruction in its entirety:

> "Presumptions are rules of law designed to assist parties to a lawsuit in proving their claims.  Presumptions are not evidence. They are tools for proving a specific fact or facts.  A presumption is an assumption of fact that the law requires the jury to make so long as certain underlying facts are proved to be true.  In other words, if certain facts and circumstances have been proved to be true, then the law requires the jury to assume that certain other facts also have been proved to be true.  The law uses presumptions to make it easier to prove facts that experience and logic tell us are most probably true but which are often difficult to demonstrate with direct evidence.
>
> "Here's a simple example:  Pretend there's a case in which the parties dispute the date on which a letter was sent.  Rhode Island has a state law that requires the jury to assume that the letter was deposited with the post office on the same date as appears in the postmark.  Once the underlying facts are proved; that is, that the letter has a certain postmark and that the postmark bears, say, yesterday's date, then the jury must assume that the letter was, indeed, deposited with the post office yesterday.  The law requires the jury to assume this fact until the party against whom the presumption operates comes forward with opposing evidence to

---

[11] We note with interest, however, that our review of the transcript reveals that the Superior Court justice used defendants' proposed jury instructions as a foundation for her instructions on this issue.

refute or rebut that assumed fact[,] thereby overcoming or negating the presumption.

"A presumption may be rebutted; that is, negated by contrary evidence. If the jury finds that evidence refuting the assumed fact has been produced during the trial, then the presumption has been rebutted. The presumption ceases to operate and no longer has any effect. As a result, the party who has the burden of proving the fact or facts in question must now prove those facts by the greater weight of the evidence and cannot rely on the help of the presumption. A party relying upon the benefit of a presumption can do so only until there is contrary evidence which renders the presumption inoperable.

"With respect to the [2002 Position and the 2004 Position] and the discrimination claims, [Dr.] Yangambi enjoys the benefit of a presumption. In a failure-to-promote discrimination claim, once the employee establishes that, 1, he was qualified for a promotion; 2, he was rejected despite his qualifications; and, 3, the position remained open or was filled by someone of a different national origin with similar or lesser qualifications, or the position remained open and the employer continued to seek applications from persons of similar qualifications, the jury is required to assume that the employer's failure to promote the employee was motivated, at least in part, by discrimination. If the employee succeeds in proving these first three elements of his claim, a rebuttable presumption of intentional discrimination arises and the burden shifts to the employer to show a legitimate, non-discriminatory reason for its employment action. Although the employer need do no more than demonstrate a reason which, taken as true, would justify a conclusion that its employment decision was based on a non-discriminatory motive, the law also expects the employer to clearly and specifically articulate its reasons. In other words, the employer is expected to clearly set forth the reasons for the employee's rejection. Doing so frames the factual issue with sufficient clarity so that the employee will have a full opportunity to demonstrate * * * that the employer's articulated reasons for failing to promote him [were] a mere pretext or ploy. Therefore, if an employer does not articulate a clear and specific explanation for the employment decision, the employee is afforded the benefit of a presumption and the jury is required to assume the employment decision was the result of intentional discrimination.

"In this case, [Providence] articulated clear and specific reasons for not promoting [Dr.] Yangambi to the positions identified in Joint Exhibits 3, 4, 7, 9 and 10. For example, one

- 11 -

witness testified that she participated in [Dr.] Yangambi's interview and that [Dr.] Yangambi's scores were low. Because [Providence] articulated a clear and specific reason for its action, [Dr.] Yangambi is not entitled to the benefit of any presumption of discrimination. On the other hand, [Providence] failed to clearly and specifically articulate its reasons for not promoting [Dr.] Yangambi to the [2002 and 2004 Positions]. Therefore, with respect to those positions only—those two positions only, the jury is required to assume [Providence's] failure to promote [Dr.] Yangambi was motivated, at least in part, by intentional discrimination <u>unless</u> the jury finds there is contrary or opposing evidence that refutes this presumption. In this way, the presumption assists [Dr.] Yangambi with his ultimate burden of persuading the jury that, with respect to the [2002 and 2004 Positions], he has proved all of the elements of his claim of intentional discrimination by a fair preponderance of the evidence. Importantly, however, if the jury finds there is contrary or opposing evidence to refute this presumption of intentional discrimination, [Dr.] Yangambi loses the benefit of the presumption and the jury can no longer assume intentional discrimination.

"* * *

"As in most Court cases, the law places the burden of proof on a person who is making a claim. All that means is that every person making a claim carries the obligation or responsibility of proving that claim. This is founded in common sense. Someone who is advancing a proposition has the burden of sustaining its validity. Here, the plaintiff is advancing a proposition concerning the defendant's conduct and the resulting harm done to plaintiff. Therefore, plaintiff must produce evidence that, when considered in light of all of the other facts proved at trial, leads the jury to conclude that what the plaintiff claims to be true is, indeed, more likely true than not." (Emphasis added.)

At the conclusion of the jury instruction, defense counsel stated that he would "reiterate [defendants'] objections at the charging conferences * * *." The Superior Court justice recognized that the objections raised at the conferences were preserved and incorporated into the sidebar discussion.

- 12 -

On April 8, 2014, the jury found for defendants on the 2002 Position and returned a verdict for plaintiff on the 2004 Position. The jury awarded Dr. Yangambi $182,710.45 in back pay and $8,000 in emotional suffering for the 2004 Position, but it also found that plaintiff had failed to mitigate his damages, thereby forfeiting the back pay award. However, on May 9, 2014, the Superior Court justice granted the motion for judgment as a matter of law on the issue of mitigation of damages, declaring that she "should not have charged the jury on the mitigation question [and] invited * * * a verdict in defendants' favor on the mitigation defense that was not supported by the law or legally sufficient evidence." The Superior Court justice explained that "[i]n failure-to-promote cases, the law recognizes that staying on the job, as opposed to quitting and taking a lesser or less secure job, counts as mitigation." She noted that, because Providence intentionally did not produce any evidence of comparable positions, it was impossible for the jury to compare "promotional opportunities, compensation, job responsibilities, working conditions[,] status * * * salary, job duties, benefits, job security[,] and seniority." Providence contended that it was not required to present evidence of comparable employment opportunities outside Providence, because Dr. Yangambi admitted that he did not consider any positions outside of Providence. The Superior Court justice rejected this argument. The defendants have renewed this contention on appeal.

An amended judgment was entered awarding plaintiff $382,545.13 in damages.[12] Both parties timely appealed.

**Standard of Review**

Our review of jury instructions is de novo. See State v. Ros, 973 A.2d 1148, 1166 (R.I. 2009) (citing State v. Graham, 941 A.2d 848, 855 (R.I. 2008)). "[T]he standard of review for

---

[12] Specifically, plaintiff was awarded $182,710.35 in back pay, $106,885.61 in interest, $8,000 in compensatory damages, $83,665 in attorneys' fees, and $1,284.17 in costs.

jury instructions is well settled. A charge 'need only adequately cover[] the law.'" Long, 61 A.3d at 445 (quoting State v. Cardona, 969 A.2d 667, 674 (R.I. 2009)). "This Court examines 'the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, * * * and * * * review[s the] challenged portions * * * in the context in which they were rendered.'" Id. (quoting Cardona, 969 A.2d at 674). "A 'trial justice is bound to ensure that the jury charge sufficiently addresses the requested instructions and correctly states the applicable law.'" Id. (quoting State v. Sivo, 925 A.2d 901, 913 (R.I. 2007)). "[A]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." Id. (quoting Sivo, 925 A.2d at 913).

"Our review of a trial justice's decision on a motion for judgment as a matter of law is de novo." McGarry, 47 A.3d at 279 (quoting Medeiros v. Sitrin, 984 A.2d 620, 625 (R.I. 2009)). "This Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.'" Oliveira v. Jacobson, 846 A.2d 822, 829 (R.I. 2004) (quoting Estate of Fontes v. Salomone, 824 A.2d 433, 437 (R.I. 2003)).

**Issues**

Doctor Yangambi alleges on appeal that the Superior Court justice erred in denying his Rule 50 motion for judgment as a matter of law on the count related to the 2002 Position. The plaintiff contends that he was entitled to judgment as a matter of law because Providence failed

- 14 -

to articulate a legitimate, nondiscriminatory reason for its employment decision in relation to the 2002 Position. He argues that it is uncontested that he successfully proved his prima facie case under McDonnell Douglas Corp. and that the Superior Court justice acknowledged on more than one occasion that defendants failed to meet their burden of production. According to plaintiff, he was entitled to judgment as a matter of law with respect to the 2002 Position because defendants failed to rebut the presumption of discrimination that arose after he established his— undisputed—prima facie case.

In their appeal, defendants assign error to the Superior Court justice's jury instructions and the grant of plaintiff's Rule 50 motion on the issue of mitigation of damages. Specifically, defendants aver that the Superior Court justice invaded the province of the jury by instructing the jury that they were "required" to presume, at least in part, that Providence discriminated against Dr. Yangambi. The defendants also contend that the Superior Court justice improperly weighed the evidence when considering whether a presumption of discrimination remained in this case and also misconstrued the law of presumptions.

On the issue of mitigation of damages, defendants argue that the Superior Court justice erred in concluding that, by remaining in his current teaching position, plaintiff mitigated his damages and in further holding that Providence was required to present evidence that comparable employment existed.[13]

**Background**

The case on appeal requires this Court to review the principles set forth by the United States Supreme Court in a trilogy of cases that form the bedrock of procedural and substantive

---

[13] The defendants also submit that, even if the issue of mitigation of damages should not have gone to the jury as a matter of law, the Superior Court justice erred in making this determination after the jury returned a verdict.

- 15 -

law in discrimination claims, Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). In McDonnell Douglas Corp., 411 U.S. at 802-04, the Court set forth a three-part, burden-shifting paradigm for employment discrimination cases based upon disparate treatment. This time-honored burden-shifting trial framework imposes a structured approach to the burdens of production and persuasion that are at play in a discrimination trial and serves as "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978). The McDonnell Douglas Corp. burden-shifting paradigm assists in overcoming two prevalent hurdles in discrimination cases. First, it recognizes that the plaintiff is not likely to prove his or her case by direct evidence of discriminatory animus—for example, interview committees are not likely to discuss the race or national origin of an applicant—and second, it constitutes a judicial recognition that "the employer has the best access to the reasons that prompted him to fire, reject, discipline or refuse to promote the complainant." Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979) (emphasis added).

Initially, it is the plaintiff who bears the burden of establishing a prima facie case of discrimination by showing that (i) he or she is a member of a protected class; (ii) was qualified for an open position and applied for it; (iii) was rejected; and (iv) was neglected in favor of someone with similar qualifications. McDonnell Douglas Corp., 411 U.S. at 802. Once the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and "[t]he burden of production, but not the burden of persuasion, then shifts to the defendant to offer a nondiscriminatory reason" for its decision not to hire or promote the plaintiff. McGarry, 47 A.3d at 280. It is then incumbent upon the employer "to articulate a plausible, legitimate, and

nondiscriminatory justification" for its adverse employment decision. Resare v. Raytheon Co., 981 F.2d 32, 42 (1st Cir. 1992). If the defendant articulates a legitimate, nondiscriminatory reason for not hiring or promoting the plaintiff, it has met its burden of production, and the rebuttable presumption of discrimination afforded to the plaintiff disappears. McGarry, 47 A.3d at 280. "The burdens of proof and persuasion [then] fall squarely upon the plaintiff to demonstrate that the defendant's tendered explanation is only a pretext and that discrimination was the true motive underlying the hiring decision." Id. at 280-81. "To satisfy this third prong, a plaintiff must do more than simply cast doubt upon the employer's justification." Resare, 981 F.2d at 42.

In Burdine, 450 U.S. at 253, the United States Supreme Court expounded upon the defendant's burden of production in a discrimination case and explained that this "intermediate evidentiary burden[] serves to bring the litigants and the court expeditiously and fairly to th[e] ultimate question" before the factfinder—whether "the defendant intentionally discriminated against the plaintiff[.]" The burden rests with the defendant to produce evidence clearly setting forth "that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Id. at 254. The Court in Burdine was careful to separate the defendant's burden of production from the burden of persuasion that remains with the plaintiff. The Court acknowledged that:

> "The defendant need not persuade the court that it was actually motivated by the proffered reasons. * * * It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Id. at 254-55 (emphasis added).

Having declared that the defendant's burden in an employment discrimination case is to produce admissible evidence that "clearly set[s] forth" the reasons for the adverse employment decision, the Supreme Court acknowledged that the burden of production was minimal, but genuine: "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id. at 255, 257. The nondiscriminatory reasons which the employer articulates must be "clear and reasonably specific." Id. at 258. "Placing this burden of production on the defendant * * * serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Id. at 255-56. Because the plaintiff in an employment discrimination case shoulders both a burden of production and the ultimate burden of persuasion, and is required "to demonstrate that the defendant's tendered explanation is only a pretext and that discrimination was the true motive," McGarry, 47 A.3d at 281, nonetheless, the reason for the adverse employment decision that the defendant articulates must be "clearly set forth" through introduction of admissible evidence. Burdine, 450 U.S. at 255.

In Hicks, 509 U.S. at 508-10, the Supreme Court examined the role of the trial justice, sitting as a factfinder, once the defendant proffers a nondiscriminatory reason for the adverse employment decision. The issue in Hicks was whether a plaintiff, after successfully establishing a prima facie case of discrimination, was entitled to judgment as a matter of law after the trial justice, sitting as the factfinder, found that he did not believe the employer's nondiscriminatory reasons for demoting and discharging the plaintiff. Id. at 508. The Supreme Court disagreed and reiterated that "the * * * plaintiff at all times bears the 'ultimate burden of persuasion,'" id. at 511, and "a reason [articulated by the employer] cannot be proved to be 'a pretext for

- 18 -

discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason," id. at 515.  However, the factfinder's disbelief of the reasons articulated by the defendant "(particularly if disbelief is accompanied by suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."  Id. at 511; see also McGarry, 47 A.3d at 281-82.  Accordingly, at the Rule 50 stage in the trial, if the trial justice concludes that the employer met its burden of production and articulated a nondiscriminatory reason for the employment decision, the presumption falls away.  The Court, of course, may not weigh the evidence when passing on a motion for judgment as a matter of law. See Hicks, 509 U.S. at 509.

The Court in Hicks also proceeded to sharpen the McDonnell Douglas Corp. framework when the employer fails to articulate a nondiscriminatory reason:

> "If the finder of fact answers affirmatively—if it finds that the prima facie case is supported by a preponderance of the evidence—it must find the existence of the presumed fact of unlawful discrimination and must, therefore, render a verdict for the plaintiff. * * * Thus, the effect of failing to produce evidence to rebut the McDonnell Douglas * * * presumption is not felt until the prima facie case has been established, either as a matter of law (because the plaintiff's facts are uncontested) or by the factfinder's determination that the plaintiff's facts are supported by a preponderance of the evidence.  It is thus technically accurate to describe the sequence as we did in Burdine: 'First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' * * *  As a practical matter, however, and in the real-life sequence of a trial, the defendant feels the 'burden' not when the plaintiff's prima facie case is proved, but as soon as evidence of it is introduced.  The defendant then knows that its failure to introduce evidence of a nondiscriminatory reason will cause judgment to go against it unless the plaintiff's prima facie case is held to be inadequate in law or fails to convince the factfinder.  It is this practical coercion which causes the McDonnell Douglas presumption to function as a means of

'arranging the presentation of evidence.'" <u>Hicks</u>, 509 U.S. at 510 n.3 (quoting <u>Burdine</u>, 450 U.S. at 252-53, and <u>Watson v. Fort Worth Bank & Trust</u>, 487 U.S. 977, 986 (1988)).

Therefore, unless the jury ultimately is unpersuaded by the plaintiff's evidence, an employer's failure to produce a nondiscriminatory reason for the employee's rejection may be fatal to the defendant once the plaintiff proves his or her <u>prima</u> <u>facie</u> case. With this background, we consider each appeal in turn.

## Analysis

## The 2002 Position

At the close of the evidence, plaintiff moved for judgment as a matter of law on the 2002 Position, arguing that plaintiff established a <u>prima</u> <u>facie</u> case, resulting in a rebuttable presumption of discrimination, and that defendants failed to rebut this presumption by articulating a legitimate nondiscriminatory reason for their failure to promote. The plaintiff argued that, because defendants failed to satisfy their burden of production, judgment as a matter of law was appropriate. It does not appear to have been contested, and defendants have conceded in their papers to this Court, that plaintiff established his <u>prima</u> <u>facie</u> case in relation to both the 2002 Position and the 2004 Position. Accordingly, the question before the Superior Court justice and this Court on <u>de</u> <u>novo</u> review, is whether defendants articulated a legitimate, nondiscriminatory reason for rejecting Dr. Yangambi in 2002 and awarding the position to Craig, an applicant with similar qualifications.

The United States Supreme Court has stated:

> "At the close of the defendant's case, the court is asked to decide whether an issue of fact remains for the trier of fact to determine. None does if, on the evidence presented, (1) any rational person would have to find the existence of facts constituting a prima facie case, and (2) the defendant has failed to meet its burden of production—<u>i.e.</u>, has failed to introduce evidence which, <u>taken as</u>

- 20 -

true, would <u>permit</u> the conclusion that there was a nondiscriminatory reason for the adverse action. In that event, the court <u>must award judgment to the plaintiff as a matter of law</u> under [Rule 50] * * *." <u>Hicks</u>, 509 U.S. at 509 (emphasis added).

Therefore, "if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issues of fact remain[] in the case." <u>Burdine</u>, 450 U.S. at 254. Likewise, if the defendant fails to introduce evidence that would permit the jury to conclude that "there was a nondiscriminatory reason," judgment for the plaintiff must enter. <u>Hicks</u>, 509 U.S. at 509.

In this case, the Superior Court justice concluded that defendants did not articulate a nondiscriminatory reason for their hiring decisions in 2002 and 2004, and we are hard-pressed to disagree with this finding, which, we conclude, presents a question of law. However, the Superior Court justice also concluded that defendants did not remain completely "silent" on this issue. The Supreme Court has recognized that "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors," including "the strength of the plaintiff's prima facie case [in this case it is undisputed], the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148-49 (2000). The Superior Court justice found that defendants failed to articulate any nondiscriminatory reason, but she erroneously held that defendants were required to do so with direct evidence.[14] However, she did acknowledge that defendants presented evidence that Craig may have been more qualified for the 2002 Position than Dr. Yangambi.

---

[14] Although the Superior Court justice declared that "there was at least <u>some</u> evidence that the candidates were ranked and that the highest ranking candidates were the ones who were recommended to the Superintendent," she failed to point to any witness or any specific testimony on this point. We therefore decline to consider this finding.

- 21 -

As noted, the <u>McDonnell Douglas Corp.</u> framework has been established to assist the presentation of evidence. See <u>Furnco Construction Corp.</u>, 438 U.S. at 577; <u>Loeb</u>, 600 F.2d at 1014. The rebuttable presumption which arises when a <u>prima</u> <u>facie</u> case has been established essentially forces the defendant to articulate a reason for its employment decision so that the plaintiff can continue on with his or her case. See <u>Burdine</u>, 450 U.S. at 255-56. The issue before this Court is whether, having concluded that defendants failed to meet their burden of production and did not articulate <u>any</u> reason for failing to appoint Dr. Yangambi in 2002, it was error to deny the motion for judgment as a matter of law and send the case to the jury. Although resolution of this issue presents the Court with a close question, we are satisfied that the Superior Court justice carefully reviewed the evidence in this case and concluded that defendants were not completely silent and that there was some evidence that Craig may have been the more qualified candidate. We decline to disturb this ruling. Our <u>de</u> <u>novo</u> review persuades us that evidence that Craig was more qualified than Dr. Yangambi, viewed in the light most favorable to defendants, was sufficient to overcome the motion for judgment as a matter of law.

## 2004 Position

The defendants appeal from the jury verdict in favor of plaintiff on the 2004 Position. The defendants assign two errors: (1) the Superior Court justice erred in instructing the jury that it was required to presume that defendants' hiring decision was motivated, at least in part, by national origin discrimination; and (2) it was error to grant plaintiff's Rule 50 motion as it related to the issue of mitigation of damages after the jury had already returned a verdict that plaintiff failed to mitigate his damages.

**Jury Instructions and the Burden-Shifting Paradigm**

Specifically, defendants assign error to a selective portion set forth in a single sentence of the jury instructions on the issue of the presumption of discrimination: "the jury is <u>required</u> to assume [Providence's] failure to promote [Dr.] Yangambi was motivated, at least in part, by intentional discrimination * * *." (Emphasis added.) This Court's function in passing on jury instructions mandates a review of the jury charge as a whole, <u>see</u> <u>Long</u>, 61 A.3d at 445; the complete sentence upon which defendants' appeal rests reads: "the jury is <u>required to assume</u> [Providence's] failure to promote [Dr.] Yangambi was motivated, at least in part, by intentional discrimination <u>unless the jury finds there is contrary or opposing evidence that refutes this presumption</u>." (Emphasis added.) The Superior Court justice also reiterated this point when she instructed the jury: "Importantly, however, if the jury finds there is contrary or opposing evidence to refute this presumption of intentional discrimination, [Dr.] Yangambi loses the benefit of the presumption and the jury can <u>no longer assume intentional discrimination</u>." (Emphasis added.) Nonetheless, defendants contend that the Superior Court justice: (1) improperly applied the law of presumptions, (2) impermissibly weighed the evidence, and (3) invaded the province of the jury.

### (a) Direct and Circumstantial Evidence

We begin by noting that the Superior Court justice was mistaken when she indicated that the employer is required to satisfy its burden of production with <u>direct</u> evidence. Although a defendant in an employment discrimination case is required to "articulate" a "clear" and "specific" nondiscriminatory reason for its employment decision, a defendant may do so by "admissible evidence," circumstantial or direct. <u>Burdine</u>, 450 U.S. at 253, 255, 258; <u>see also</u> <u>State v. Patel</u>, 949 A.2d 401, 414 (R.I. 2008) ("[Courts] do not distinguish between the probative

value of circumstantial and direct evidence[.]"). However, proof by circumstantial evidence does not diminish the burden that must be met: the employer must articulate a nondiscriminatory reason for the adverse employment decision.

The law is unwavering that an employer's nondiscriminatory reason—whether established by direct or circumstantial evidence—must be clear and specific, in order to frame the factual issues such that the plaintiff, who bears the ultimate burden of persuasion, can prove "the crux of * * * a discrimination case"—"that the defendant's purported reason for not hiring the plaintiff was false, [and] that discrimination was the real reason." McGarry, 47 A.3d at 281; see also Burdine, 450 U.S. at 258 ("[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific."); Chapman v. Al Transport, 229 F.3d 1012, 1034 (11th Cir. 2000) (holding that a defendant's legitimate and nondiscriminatory reason can be subjective as long as it is "clear and reasonably specific" (quoting Burdine, 450 U.S. at 258)); E.E.O.C. v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir. 1992) ("[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need to prove that the reasoning was applied in a nondiscriminatory fashion. * * * However, the proffered reason for the action taken against the minority employee must be reasonably specific and clear." (citing Burdine, 450 U.S. at 254, 258)). The defendant essentially must "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." Reeves, 530 U.S. at 142 (quoting Burdine, 450 U.S. at 254). Thus, we are of the opinion that the Superior Court justice's reasoning that direct evidence was necessary was flawed. However, because this error is not relevant to our analysis, we deem it harmless. The Superior Court justice did not inform the jury that defendants could meet their burden of production only by direct evidence and

correctly instructed the jury, before the start of the trial, on the probative value of circumstantial and direct evidence.

### (b) Defendants' Burden of Production

Turning to defendants' central contention, our review of this record confirms that defendants failed to offer any evidence articulating a legitimate, nondiscriminatory reason for not promoting Dr. Yangambi to the 2004 Position that remotely qualifies as "clear and reasonably specific." Burdine, 450 U.S. at 258. The defendants merely presented testimony about their general hiring practices, which appear to be ad hoc at best and admittedly not always honored. This testimony, while suggestive of a general policy, had little bearing on the 2004 Position and begs the question as to why Dr. Yangambi was not promoted. Generic testimony regarding an employer's customary hiring or promotional practices, standing alone, does not articulate a "clear and reasonably specific" nondiscriminatory reason why one employee was promoted over another. Id.

To be sure, hiring practices and policies are relevant in employment discrimination cases. But such hiring practices—and an employer's faithful adherence to these procedures—should serve as the starting point for the employer's nondiscriminatory reason and not the finish line. Evidence about the members of the interview committees, the names of the candidates and their respective qualifications, who among them was interviewed, how they were ranked, and evidence that, at the conclusion of this process, a different candidate was selected, is the grist of the employer's adherence to its hiring practices. In this case, defendants failed to present a scintilla of evidence about the candidates, what they were asked, how they were ranked, or whose name or names were forwarded to the Superintendent. Was it only the successful candidate's name that was forwarded? Employers do not satisfy their burden of production with

a general reference to their "fair" hiring practices, particularly when, as in this case, the employer offers no evidence that these hiring practices were honored. The evidence also demonstrated that Providence's deviation from these hiring practices benefited the successful candidate, who was not qualified for the position at the time that the application period closed.

The only testimony presented that was relevant to the interviews held in relation to the 2004 Position was that of O'Connor. The crux of O'Connor's testimony was that she did not know that Dr. Yangambi came from the Congo, but she was sure the committee did not discuss his national origin, and she could not recall his ranking without reviewing the ranking sheets, which were not available. Certainly, this testimony, while marginally relevant to the issues in this case, does not qualify as a nondiscriminatory <u>reason</u> why Dr. Yangambi was not selected for the 2004 Position.

In stark contrast, we note that, with respect to eight other claims that went to the jury, defendants presented specific reasons why Dr. Yangambi was not promoted and even produced ranking sheets for three of those positions. The Superior Court justice also found "that [defendants] did have people who could have articulated the reason [Dr.] Yangambi wasn't promoted for [the 2004 Position]" and failed to do so. She found that defendants "chose to rely on other evidence from which [they] hope[] the jury will draw an inference concerning what the legitimate non-discriminatory reason must have been." Although employers are not foreclosed from articulating a nondiscriminatory reason through circumstantial evidence, <u>see</u> <u>McGarry</u>, 47 A.3d at 281, the evidence produced must amount to more than mere generalities from which a factfinder is expected to deduce a reason by piling inference upon inference. This is not a syllogistic exercise. <u>See</u> <u>Reeves</u>, 530 U.S. at 141 ("'[T]he question facing triers of fact in discrimination cases is both sensitive and difficult,' and * * * '[t]here will seldom be

'eyewitness' testimony as to the employer's mental processes.'" (quoting United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716 (1983))). An employer who overlooks the role of the trial justice in deciding whether a presumption has been overcome, does so at its peril.

The defendants call our attention to the fact that plaintiff vigorously challenged Providence's hiring practices, arguing that plaintiff—and presumably the jury—could draw an inference that defendants' nondiscriminatory reason for not promoting Dr. Yangambi was that he was "outranked" for the position. Such an inference is permissible when there is evidence about the results of the hiring practices, such as the names of the candidates, the members of the interview committee, and the rankings. Significantly, this meager testimony was the only evidence that defendants produced on the 2004 Position, and plaintiff had every right to challenge it. However, our de novo review of the record in this case leads us to the same conclusion as the Superior Court justice: defendants failed to satisfy their burden to produce admissible evidence articulating a legitimate nondiscriminatory reason for their employment decision.[15]

In this case, it was incumbent upon the Superior Court justice to determine whether the first and second prongs of McDonnell Douglas Corp.—that plaintiff established a prima facie case and, if so, whether defendants presented evidence that rebutted the presumption of discrimination—had been satisfied. We are of the opinion that the issue of whether a party has met its burden of production is a question of law. See Caldwell v. Paramount Unified School

---

[15] Because we are of the opinion that, taking all of defendants' evidence as true, defendants still did not satisfy their burden of production, we deem it unnecessary to determine if the Superior Court justice improperly weighed the evidence. Even if the Superior Court justice did err in her analysis, we conduct de novo review in these circumstances. Since we arrive at the same conclusion—defendants did not meet their burden—any error is harmless.

- 27 -

District, 41 Cal. App. 4th 189, 201 (Cal. Ct. App. 1995) ("[W]hether or not a plaintiff has met his or her prima facie burden, and whether or not the defendant has rebutted the plaintiff's prima facie showing, are questions of law for the trial court, not questions of fact for the jury.").

We also point to Rule 304(a) of the Rhode Island Rules of Evidence, which provides:

> "The effect of a presumption affecting the burden of producing evidence in civil cases is to <u>require</u> the trier of fact to assume the existence of the presumed fact <u>unless</u> and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption. Nothing in this section shall be construed to prevent the drawing of any inference that may be appropriate." (Emphasis added.)

According to the Advisory Committee's note to Rule 403: "[i]f the adverse party does offer contradictory evidence, * * * the court does not instruct the jury that it may presume the existence of the presumed fact." However, "[i]f the adverse party offers no contradictory evidence, the court instructs the jury that if it finds the basic fact,[16] it <u>must</u> find the presumed fact." <u>Id.</u> (emphasis added). Therefore, it is the function of the trial justice to undertake this analysis in order to properly instruct the jury.

### (c) The Jury Instruction

"It is well-established that when reviewing jury instructions, we do so holistically, and not in a piecemeal fashion." <u>Contois v. Town of West Warwick</u>, 865 A.2d 1019, 1028 (R.I. 2004) (citing <u>State v. Perry</u>, 779 A.2d 622, 625 (R.I. 2001)). Furthermore, "[w]e shall not exaggerate out of context a single word or phrase or sentence in an instruction; rather, the challenged portion will be examined in the context of the entire instruction." <u>Lieberman v.</u>

---

[16] We are cognizant that the note to Rule 403 states that "the court instructs the jury that if it finds the basic fact * * *." However, we perceive no issue with the Superior Court justice instructing the jury that the basic facts were found, as the facts necessary to prove plaintiff's <u>prima</u> <u>facie</u> case were not contested at trial and are conceded on appeal.

Bliss-Doris Realty Associates, L.P., 819 A.2d 666, 672 (R.I. 2003) (quoting Perry, 779 A.2d at 625). We do not agree with defendants' contention that the Superior Court justice erred by including the phrase "the jury is required." Indeed, in that same sentence, the Superior Court justice clearly advised that "unless the jury finds there is contrary or opposing evidence that refutes this presumption[,]" in which case the presumption was rebutted. (Emphasis added.) She continued: "Importantly, however, if the jury finds there is contrary or opposing evidence to refute this presumption of intentional discrimination, [Dr.] Yangambi loses the benefit of the presumption and the jury can no longer assume intentional discrimination." Reviewing the instruction in its entirety, we perceive no error.

The defendants also argue that the Superior Court justice erroneously relayed to the jury that "defendant[s] failed to articulate a nondiscriminatory reason." Although the Superior Court justice indicated to the jury that defendants had articulated nondiscriminatory reasons for some claims and had not done so for others, namely the 2002 Position and the 2004 Position,[17] that is the function of a trial justice when instructing a jury on a question of law. The Superior Court justice instructed the jury that, although plaintiff was entitled to a presumption, it was rebuttable if the jury found contrary evidence—albeit evidence that was not specific enough to deflate the presumption in its entirety—to rebut the presumption. Presumably this is just what the jury did

---

[17] The Superior Court justice charged on this point as follows:

> "In this case, [Providence] articulated clear and specific reasons for not promoting [Dr.] Yangambi to the positions identified in Joint Exhibits 3, 4, 7, 9 and 10. For example, one witness testified that she participated in [Dr.] Yangambi's interview and that [Dr.] Yangambi's scores were low. Because [Providence] articulated a clear and specific reason for its action, [Dr.] Yangambi is not entitled to the benefit of any presumption of discrimination. On the other hand, [Providence] failed to clearly and specifically articulate its reasons for not promoting [Dr.] Yangambi to the [2002 and 2004 Positions]."

- 29 -

in regard to the 2002 Position, where the qualifications of the successful candidate equaled or exceeded those of Dr. Yangambi. Accordingly, we are of the opinion that the Superior Court justice did not err in instructing the jury on the law of presumptions and its application to this particular discrimination claim.

## Mitigation of Damages

Finally, defendants argue that the Superior Court justice erred in granting judgment as a matter of law on the affirmative defense that plaintiff failed to mitigate damages. Specifically, defendants contend that they were not required to present evidence of equal employment opportunities outside Providence because it was plaintiff's position at trial that he would not have considered employment outside Providence. The Superior Court justice rejected that argument, explaining that in the absence of evidence of comparable positions that were substantially equivalent, in terms of salary, promotion opportunities, seniority, job duties, working conditions, and convenience to the employee's home, a reasonable juror could not undertake the requisite analysis on mitigation of damages. We agree with this ruling and are not convinced that, in order to mitigate damages, plaintiff was required to consider employment outside Providence.

In order to prove that a plaintiff failed to mitigate damages, the employer must prove that "(i) though substantially equivalent jobs were available in the relevant geographic area, (ii) the claimant failed to use reasonable diligence to secure suitable employment." Quint v. A.E. Staley Manufacturing Co., 172 F.3d 1, 16 (1st Cir. 1999); see also Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 29 (1st Cir. 2012). However, an employer is "relieved * * * of the burden to prove the availability of substantially equivalent jobs in the relevant geographic area once it has been shown that the former employee made no effort to secure suitable employment." Quint, 172

F.3d at 16; see also Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d Cir. 1998); Sellers v. Delgado College, 902 F.2d 1189, 1193 (5th Cir. 1990). These principles of law only apply to alternative and equal employment in a relevant geographical area.

"Our review of a trial justice's decision on a motion for judgment as a matter of law is de novo." McGarry, 47 A.3d at 279 (quoting Medeiros, 984 A.2d at 625). A review of the record indicates that Dr. Yangambi applied for approximately forty administrative positions in Providence and had a particularized interest in working within the City of Providence. Specifically, Dr. Yangambi lives in Providence and is part of the fabric of its diversity. He has an interest in continuing his career in an urban setting and learning more about Providence's rich culture. Doctor Yangambi also recognized that seniority is important when working in a school system; and, having taught in Providence since 1992, he would have lost these valuable seniority rights if he moved elsewhere. See Jurgens v. E.E.O.C., 903 F.2d 386, 389 (5th Cir. 1990) ("[W]here an employer discriminatorily denies promotion to an employee, that employee's duty to mitigate damages encompasses remaining on the job."); Equal Employment Opportunity Commission v. Safeway Stores, Inc., 634 F.2d 1273, 1285 (10th Cir. 1980) (recognizing that the plaintiff's decision to remain on the job was "prudent under the circumstances" given his "long-term position" with his employer). Certainly, remaining on the job and soldiering through so many disappointments was the plaintiff's decision to make and was "prudent under the circumstances," because there was no proof that going elsewhere would have been more remunerative. We are not satisfied that Dr. Yangambi was required to seek employment outside of Providence, with its attendant loss of seniority rights, in order to mitigate damages. We are of the opinion that the Superior Court justice properly reserved on the plaintiff's Rule 50 motion and subsequently granted the motion after the jury returned its verdict.

## Conclusion

For the reasons discussed herein, the judgment is affirmed. The Superior Court justice's denial of the plaintiff's Rule 50 motion on the 2002 Position is affirmed. Likewise, in regard to the 2004 Position, the jury verdict and grant of the plaintiff's Rule 50 motion as it relates to the issue of mitigation of damages is affirmed. The papers in this case shall be remanded to the Superior Court.

**Justice Robinson, dissenting**. I have respect for the majority's attempt to reconcile the jury instructions which guided the jury in this complex case with well-established principles of employment discrimination law; but I fundamentally disagree with what the majority has written in that regard, and I must record my very strong dissent. In my opinion, the jury was provided with a fundamentally erroneous instruction; and, therefore, I am convinced that the jury's verdict for the plaintiff should be vacated.

I begin by noting my agreement with the principle set forth as follows in the majority opinion: "We are of the opinion that the issue of whether a party has met its burden of production is a question of law."[1] However, where I fundamentally part company with the majority is with respect to its explicit agreement with the trial justice, after a <u>de novo</u> review, that defendants "failed to offer any evidence articulating a legitimate, nondiscriminatory reason for not promoting Dr. Yangambi to the 2004 Position that remotely qualifies as 'clear and reasonably specific.'" (quoting <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 258 (1981)). The fatal flaw in that rather conclusory statement is revealed by the sentence that

---

[1] I note that the jury verdict in this case was favorable to plaintiff with respect to his claim of national origin discrimination as to the 2004 promotion decision. Pursuant to the explicit January 5, 2011 Stipulation between the parties, the allegations of race discrimination that were contained in the second amended complaint were not litigated at trial.

immediately follows it in the majority opinion: "The defendants merely presented testimony about their general hiring practices, which appear to be <u>ad</u> <u>hoc</u> at best and admittedly not always honored." In my view, it defies logic and it is inconsistent with settled principles in this domain of the law to concede that defendants "<u>presented</u> <u>testimony</u> about their general hiring practices," but then to conclude, as the majority does, that "[g]eneric testimony regarding an employer's customary hiring or promotional practices, standing alone, does not articulate a clear and reasonably specific nondiscriminatory reason why one employee was promoted over another." (Emphasis added.) (Internal quotation marks omitted.) In my considered judgment, that testimony about defendants' general hiring practices fulfilled their burden of production; and I fail to see how it is not as "clear and reasonably specific" as <u>Burdine</u>, 450 U.S. at 258, requires that it be. <u>See</u> <u>also</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 507 (1993) ("[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, <u>if</u> <u>believed</u> <u>by</u> <u>the</u> <u>trier</u> <u>of</u> <u>fact</u>, would support a finding that unlawful discrimination was not the cause of the employment action.") (emphasis in original) (internal quotation marks omitted); <u>Smith v. F.W. Morse & Co., Inc.</u>, 76 F.3d 413, 421 (1st Cir. 1996) (stating that a defendant's burden of production is a "modest hurdle").

The defendants in the instant case sustained their burden by producing evidence; it matters not whether that evidence persuaded the trial justice. <u>See</u> <u>Hicks</u>, 509 U.S. at 509 ("By producing <u>evidence</u> (whether ultimately persuasive or not) of nondiscriminatory reasons, [the] petitioners sustained their burden of production, and thus placed themselves in a better position than if they had remained silent.") (emphasis in original) (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Burdine</u>, 450 U.S. at 254 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons."). The plaintiff remained free to attack with hammer and

tong (as the record shows he most determinedly did) that articulated legitimate, nondiscriminatory reason (i.e., the existence of "general hiring practices") as being, in the majority's words, "ad hoc at best and admittedly not always honored."  The majority opinion goes on at great length to point to what it considers to be lapses from adherence to those "general hiring practices" where the 2004 promotion decision was concerned.  And I readily concede that pointing to such flaws would have been fair game (and indeed was precisely that) for plaintiff to use in seeking to prove pretext and to carry his ultimate burden of persuasion.  See Hicks, 509 U.S. at 507 ("It is important to note * * * that although the McDonnell Douglas presumption shifts the burden of production to the defendant, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (emphasis in original) (internal quotation marks omitted).  In my opinion, defendants did not have to prove that they followed the "general hiring practices" with respect to the 2004 promotion decision in order to meet their burden of production; it was for plaintiff to provide contrary proof in the course of the third phase under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).[2]

Moreover, in my judgment, the jury instruction in this case contained a fundamental flaw (a flaw that is so grave that it certainly can be said that a jury "could have been misled by [the] erroneous charge to the resultant prejudice" of defendants; see State v. Ventre, 910 A.2d 190,

---

[2]    I note that, in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 255-56 (1981), the United States Supreme Court stated, with respect to a defendant's burden of production, that "[t]he sufficiency of the defendant's evidence should be evaluated by the extent to which" it "present[s] a legitimate reason for the action and * * * frame[s] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext."  The fact that, in the instant case, plaintiff was clearly able to identify the legitimate, nondiscriminatory reason that defendants presented and that plaintiff was, thus, able to attempt to demonstrate pretext by arguing that defendants did not follow their "general hiring practices," is further indication that defendants did actually meet their burden of production.

197 (R.I. 2006)). I refer specifically to the language in the jury instruction whereby the jury was explicitly informed as follows with respect to defendants:

> "[The defendants] failed to clearly and specifically articulate [their] reasons for not promoting Mr. Yangambi to the [2004 Position]. Therefore, with respect to [said position,] the jury is required to assume the [defendants'] failure to promote Mr. Yangambi was motivated, at least in part, by intentional discrimination unless the jury finds there is contrary or opposing evidence that refutes this presumption."

I fundamentally disagree that defendants failed to clearly and specifically articulate their reasons, and I therefore disagree that the jury was "required" to assume the fact of intentional discrimination on defendants' part. This reasoning is inconsistent with the finely balanced allocation of the burdens of proof and production that is outlined in McDonnell Douglas Corp., 411 U.S. at 802-04, and the cases that have exegeted and refined that seminal case. See, e.g., Hicks, 509 U.S. 502; Burdine, 450 U.S. 248. As such, in my opinion, this case should be remanded for a new trial.

I do not lightly dissent, but I have no choice but to do so. I am convinced that the verdict for the plaintiff was reached after the jury had been instructed in a fundamentally erroneous way. I believe that the balanced procedural approach that was outlined in the seminal McDonnell Douglas Corp. case has been materially disregarded in this case and that the result reached is inconsistent with settled principles of law.[3] With regret that I cannot join the majority, but nevertheless with some degree of fervor, I respectfully submit my unequivocal dissent.

---

[3] Since I believe that the fundamental error in the jury instructions requires a new trial in this case, I need not and do not reach the difficult issues surrounding the question of mitigation of damages (i.e., the adequacy vel non of plaintiff's attempts to mitigate his damages and the manner in which that issue was handled as a matter of civil procedure).

- 35 -

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Matthieu W. Yangambi v. Providence School Board et al. |
| **Case Number** | No. 2014-281-Appeal. No. 2014-282-Appeal. (PC 04-6001) |
| **Date Opinion Filed** | June 23, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Patricia A. Hurst |
| **Attorney(s) on Appeal** | For Plaintiff: Gina A. DiCenso, Esq. V. Edward Formisano, Esq. Nicole J. Policastro, Esq. Michael D. Pushee, Esq. |
| | For Defendants: Kevin F. McHugh, Esq. Megan K. DiSanto, Esq. Kathryn M. Sabatini, Esq. |