July 15, 2025

**Supreme Court**

No. 2023-368-C.A.
(P1/21-3503AG)
No. 2023-369-C.A.
(P2/22-646ADV)

State                               :

       v.                           :

Andrew Mangru.                      :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                :

v.              :

Andrew Mangru.      :

Present: Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** In these consolidated appeals, the defendant, Andrew Mangru, appeals from two judgments of conviction following a jury verdict finding him guilty of second-degree murder and other offenses. The defendant raises one argument on appeal, asserting that the trial justice erred in instructing the jury to consider voluntary manslaughter only if it found that the state did not prove either first-degree or second-degree murder beyond a reasonable doubt. For the reasons set forth herein, we affirm the judgments of conviction of the Superior Court.

## I

### Facts and Travel

We derive the following facts from the trial transcripts. In 2017, defendant and Daniya Isom began dating. In 2019, defendant and Isom had a child together.

- 1 -

The defendant and Isom's relationship was "[o]n and off," and the two would see other people "[w]hen [they] were off * * *." The defendant and Isom continued this "[o]n and off" relationship through July 2021, when, according to Isom, they permanently ended their relationship. Although the couple had separated, defendant and Isom maintained contact via text messaging throughout August 2021. During that same month, Isom became sexually intimate with Andrei Bonilla, the decedent in the case at bar. At trial, Isom described her relationship with Bonilla as one of "friends with benefits."

On August 27, 2021, Isom spent time with her brother, her cousin, her cousin's girlfriend, and a friend. The group was gathered at the home of Isom's friend in Pawtucket, until about ten o'clock at night. At this time, the group left the friend's house in Pawtucket and moved to Isom's house in Providence. Once at Isom's house, some of the group, including Isom, continued "[d]rinking, smoking hookah, smoking weed, [and] listening to music[,]" as they had been doing since the afternoon.

Andrei Bonilla arrived at Isom's house around one o'clock in the morning on August 28, 2021. After Bonilla arrived, Isom exited her house and got into Bonilla's car. Isom and Bonilla then "parked in the parking lot behind [Isom's] house and * * * had sex for a while." After this, Isom and Bonilla sat in Bonilla's car and talked. While Isom was with Bonilla, defendant arrived at Isom's house. The

defendant was searching for Isom, questioning the individuals in Isom's house as to her whereabouts. The defendant then exited the house.

According to her testimony at trial, it was at this point that Isom saw defendant on the street corner near her house. Isom then exited Bonilla's car and questioned defendant as to why he was there. In response, defendant asked Isom, "Who is that in the car? Who the f*** is that in the car?" Following this exchange, Isom testified, she informed defendant that her friend was in the car. Thereafter, Isom testified, defendant slapped her, then banged on the car window, and fired gunshots through the driver's side window while Bonilla was still in the driver's seat. At trial, Isom testified that she heard about five shots fired and then saw Bonilla drive away. Isom further testified that as Bonilla drove away, she observed defendant continue to fire shots towards the car, until the firearm made "a clicking sound once there was [*sic*] no more bullets."

Eventually, defendant and Isom proceeded back inside Isom's house, where, according to Isom, defendant yelled at a guest and argued with Isom's brother. At trial, Isom testified that she stated to defendant that she would call the police "if something bad happened to [Bonilla]," at which point defendant "r[an] out the door." Isom, and all of the other individuals at the gathering, then got in Isom's car to search for Bonilla. Shortly after turning onto Branch Avenue, Isom observed emergency vehicles at the Cumberland Farms gas station and store. When she got closer, Isom

observed that Bonilla's car had crashed into the protective bollards in the parking lot of Cumberland Farms. Isom then spoke with police officers on scene and gave them a statement. Bonilla was deceased in his car.

On November 15, 2021, a grand jury indictment was filed, charging defendant with: murder (count one); discharge of a firearm while in the commission of a crime of violence, to wit, murder (count two); assault with a dangerous weapon (count three); use of a firearm while in the commission of a crime of violence, to wit, domestic assault with a dangerous weapon (count four); assault or battery, or both, by strangulation (count five); assault (count six); and possession of a pistol without a license (count seven).

Thereafter, a criminal information in a second case against defendant was filed on March 21, 2022, charging defendant with: the corrupt, malicious, or reckless endeavor to influence, obstruct, or impede the due administration of justice (count eight); felony solicitation to commit obstruction of the judicial system (count nine); and attempted violation of a no contact order (count ten).[1] These charges arose from defendant's conduct while incarcerated at the Adult Correctional Institutions,

---

[1] For clarity, we refer to all of the charges against defendant as counts one through ten, as they were presented to the trial jury as such, in a consolidated case as discussed *supra*. In the Superior Court, there were two separate judgments of conviction entered under the two individual case numbers. The defendant appealed from both judgments of conviction, and this Court granted defendant's motion to consolidate his appeals.

awaiting trial for the charges on which he was indicted, as discussed *supra*. The two cases were consolidated, pursuant to a motion by the state, over the objection of the defendant, and all charges—ten in total—were tried in one trial.

A jury trial commenced in the Superior Court on November 30, 2022. After the close of evidence, the trial justice instructed the jury according to her proposed instructions. Prior to this, both the state and defendant, through counsel, had objected to the trial justice's proposed jury instructions. The state objected to the inclusion of an instruction on voluntary manslaughter and argued that there was no evidence showing provocation that could have given rise to defendant losing self-control, causing him to kill the decedent. This, according to the state, obviated the need for any instruction on voluntary manslaughter. In response, defendant countered that there need be only a scintilla of evidence of adequate provocation to warrant such an instruction. The trial justice agreed and overruled the state's objection to the voluntary manslaughter instruction and included it in the final instructions to be delivered to the jury.

The defendant also objected to the jury instructions as proposed by the trial justice. Specifically, defendant objected "to language indicating that the jury should only consider the charge of involuntary [*sic*] manslaughter if, in fact, they have found that the [s]tate failed to prove beyond a reasonable doubt elements of the crime of either first-degree or second-degree [murder]." The defendant argued "that even if

- 5 -

the jury finds that the elements of first- or second-degree [murder] have been satisfied, they then can proceed * * * to determine whether or not there was adequate provocation that would negate the malice aforethought or the malice element of second- and first-degree murder." In making this argument, defendant relied upon *Mullaney v. Wilbur*, 421 U.S. 684 (1975).

Additionally, defendant argued that even if the jury is satisfied that the state has proven the elements of first-degree or second-degree murder,

> "the jury should be instructed that they must then consider whether or not the [s]tate has negated any adequate provocation by proof beyond a reasonable doubt, inasmuch as a similar manner, that when self-defense is presented in a case that would normally be a murder case or a finding of second-degree murder, when self-defense is presented, the [s]tate has the obligation to negate that by proof beyond a reasonable doubt."

The trial justice overruled this objection by defendant. The trial justice reasoned:

> "Rhode Island law is clear that voluntary manslaughter is a lesser-included offense of a murder charge. It does not require first that the [s]tate demonstrate a murder charge and then disprove a lesser-included offense. I do not know of any case law in Rhode Island that analogizes a voluntar[y] manslaughter requested instruction with [] self-defense[.] * * * The [s]tate is required to prove each and every element of the charge of voluntary manslaughter beyond a reasonable doubt, and that voluntary manslaughter comes about in this case only if the [s]tate first does not prove first-degree murder, then the lesser-included offense of second-degree murder."

Ultimately, the jury found defendant guilty of second-degree murder on count one, and guilty on counts two, six, seven, eight, nine, and ten. The jury found defendant not guilty on counts three, four, and five. Accordingly, the trial justice sentenced defendant to two consecutive life sentences for counts one and two, and concurrent terms of one year for count six, ten years for count seven, five years for count eight, five years for count nine, and one year for count ten. Judgments of conviction entered to that effect on June 13, 2023. The defendant filed premature but valid notices of appeal on May 22, 2023.

## II

## Standard of Review

"This Court reviews 'jury instructions on a *de novo* basis.'" *State v. Isom*, 251 A.3d 1, 6 (R.I. 2021) (quoting *State v. Ros*, 973 A.2d 1148, 1166 (R.I. 2009)). "It is well established that, on review, we examine jury instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them." *Id.* (quoting *Ros*, 973 A.2d at 1166). "This Court will not examine a single sentence apart from the rest of the instructions, but rather the challenged portions must be examined in the context in which they were rendered." *Id.* (quoting *Ros*, 973 A.2d at 1166).

"Pursuant to G.L. 1956 § 8-2-38, we determine whether the jury charge sufficiently addresses the requested instructions and correctly states the applicable

law." *Isom*, 251 A.3d at 6 (quoting *Ros*, 973 A.2d at 1166). "In so doing, we examine the record in a light most favorable to the defendant." *Id*. (quoting *State v. Soler*, 140 A.3d 755, 759-60 (R.I. 2016)). "An erroneous charge warrants reversal only if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party." *Yangambi v. Providence School Board*, 162 A.3d 1205, 1217 (R.I. 2017) (brackets omitted) (quoting *State v. Long*, 61 A.3d 439, 445 (R.I. 2013)).

## III

### Discussion

We begin our analysis by reviewing the pertinent proceedings after both the prosecution and defense had rested. First, the trial justice entertained and denied defendant's motion for judgment of acquittal. Then, she took up the issue of jury instructions, indicating that she had previously provided both parties with a copy of her proposed instructions. The state objected to the inclusion of an instruction on voluntary manslaughter, arguing that "the evidence wholly fails to support such a charge." The state elaborated that defendant may have been angry but there was simply no evidence of provocation such as would entitle him to a manslaughter instruction.

The defendant disagreed. It should be noted, however, that heat-of-passion manslaughter was not his theory of defense. Instead, defendant maintained that he was not the shooter; he argued that he was the victim of a sloppy and incomplete

police investigation. Nevertheless, he suggested that an instruction on voluntary manslaughter was appropriate because there was more than a scintilla of evidence to support a finding of adequate provocation.

Additionally, defendant objected to language indicating that the jury should consider the charge of voluntary manslaughter only if it first found that the state failed to prove either first- or second-degree murder. In support, he cited *Mullaney v. Wilbur*, 421 U.S. 684 (1975), for the proposition that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case." Under this theory, defendant posited "that even if the jury finds that the elements of first- or second-degree [murder] have been satisfied, they then can proceed on to determine whether or not there was adequate provocation that would negate the malice aforethought or the malice element of second- and first-degree murder." The defendant referred to his proposed instructions concerning first-degree murder, which stated:[2] "The state must also disprove beyond a reasonable doubt that [defendant] did not act in the heat of passion under adequate provocation."

---

[2] The defendant's proposed instructions did not include an instruction on second-degree murder.

To this point, defendant requested that the jury be advised that, even if it finds that the elements of first- or second-degree murder had been proven beyond a reasonable doubt, it also must consider "whether or not the State has negated any provocation by proof beyond a reasonable doubt * * *." The trial justice declined to give defendant's requested instructions, stating: "Rhode Island law is clear that voluntary manslaughter is a lesser-included offense of a murder charge. It does not require first that the State demonstrate a murder charge and then disprove a lesser-included offense."

On appeal, defendant submits that the trial justice erred in "giving an instruction that did not allow the jury to consider voluntary manslaughter unless it first found that the state had failed to prove beyond a reasonable doubt either first- or second-degree murder." According to defendant, "[t]he jury was not permitted to consider whether the specific intent to kill had been negated by heat of passion, which would have reduced the crime of murder to one of voluntary manslaughter." We disagree.

The trial justice clearly instructed the jurors that they "must consider these instructions in their entirety." She also emphasized on several occasions, in words to the effect, that:

> "[T]he burden at all times is on the State of Rhode Island to prove to you with competent, credible evidence that this defendant is guilty beyond a reasonable doubt. The defendant never has to prove his innocence. Therefore, if

- 10 -

the State fails to establish each and every fact essential to the defendant's guilt of a crime charged because the testimony in support of such element does not satisfy you beyond a reasonable doubt, then you must find the defendant not guilty on that charge."

Further, the trial justice informed the jurors that they may "infer a defendant's intent or state of mind from all of the surrounding circumstances [and] may consider any statement made or acts done by [defendant] and all other facts and circumstances in evidence which may indicate to you the defendant's intent or state of mind."

Finally, the trial justice explained the elements of the specific charges against defendant, defining such terms as "malice," "premeditation," "willfully," and "malice aforethought." Significantly, she instructed the jury that if the state proved beyond a reasonable doubt that defendant had caused the death of Andrei Bonilla with malice aforethought but failed to prove premeditation, then it should find defendant not guilty of first-degree murder and proceed to consider the lesser-included offense of second-degree murder. Similarly, if the state failed to prove any of the elements of second-degree murder, the jury should "take up and consider the lesser offense of voluntary manslaughter."

The defendant's sole issue on appeal is that the jury instructions did not allow the jury to consider voluntary manslaughter unless it first found that the state had failed to prove either first- or second-degree murder. His argument rests upon two theories, neither of which we deem persuasive.

First, citing to *State v. Hockenhull*, 525 A.2d 926 (R.I. 1987), and *State v. Correra*, 430 A.2d 1251 (R.I. 1981), as his principal authorities, defendant maintains that the jury instructions are in error as a matter of Rhode Island common law. Second, he posits that the instructions offend principles of due process under the teachings of *Mullaney*.

Although it is true that the trial justice instructed the jurors that they could not consider the charge of voluntary manslaughter unless the state had failed to prove first- and second-degree murder, she never advised them that they could not consider the heat of passion mitigating factors in their deliberations on the two murder charges. Viewing the instructions in their entirety, as both the jury and we must, we are of the opinion that the trial justice thoroughly explicated the criminal act of voluntary manslaughter. As it pertained to the evidence in the instant case, she explained:

> "One, there must have been an adequate provocation for the shooting; two, the shooting must have occurred in the heat of passion; three, it must have been a sudden heat of passion, that is, the shooting must have followed the provocation before there was a reasonable opportunity for the passion to cool; and, four, there must have been a causal connection between the provocation, the passion, and the fatal act."

The trial justice then went on to define a few terms including "heat of passion"—"it must be enough that he acted as a result of passion rather than reason. Heat of passion may include anger, terror, or fear." Armed with this information,

- 12 -

the jury considered the crimes of first- and second-degree murder, ultimately concluding that the state had proven beyond a reasonable doubt that defendant had committed second-degree murder. At no point in her instructions did the trial justice preclude the jury from considering whether defendant had acted in the heat of passion due to adequate provocation. Rather, she informed the jurors that they must consider her instructions in their entirety. Specifically, with respect to the issue of intent, she said: "You should consider all of the circumstances in evidence that you think are relevant in determining whether the State has fulfilled its burden of proving beyond a reasonable doubt that the defendant acted with the required intent or state of mind."

As to the crime of second-degree murder (for which defendant was in fact convicted), the trial justice explained that it was a willful killing committed with malice, but when "a person's conscious intent or design to kill existed only momentarily or fleetingly, before he committed the fatal act * * *." She further defined malice as an essential element of first- or second-degree murder that, *inter alia*, can arise from an express intent to kill or be implied from "wanton recklessness and an extreme indifference to the sanctity of human life."

The defendant takes primary issue with the following instruction: "If you find the State has failed to prove * * * beyond a reasonable doubt the crime of murder, either in the first degree or the second degree, you should then take up and consider

- 13 -

the lesser offense of voluntary manslaughter." Because of that instruction, defendant argues that the "jury was not permitted to consider whether the specific intent to kill had been negated by heat of passion, which would have reduced the crime of murder to one of voluntary manslaughter."

It is certainly true that the trial justice methodically instructed the jury to consider three homicidal offenses in descending order of severity—first-degree murder first; then, if the state failed to prove all of its elements, the lesser-included offense of second-degree murder; and if the state failed to prove second-degree murder, then the lesser-included offense of voluntary manslaughter. Yet the jury was never prevented from considering the evidence that may have supported a finding of voluntary manslaughter. The jurors were specifically told that "voluntary manslaughter is an intentional homicide that does not include the element of malice aforethought by reason of one or more mitigating factors. Such mitigating factors include the heat of passion that arises out of adequate provocation." Thus, the concern expressed in *Hockenhull* that "a jury may erroneously convict a criminal defendant of the principal offense charged, despite the prosecution's inability to prove an element of that offense, when the jury is convinced that the defendant's conduct was criminal" was significantly reduced. *Hockenhull*, 525 A.2d at 930.

Here, the jury was aware that voluntary manslaughter was in play as a possible alternative to the murder offenses. It had been instructed that adequate provocation

"must be of a nature such that it would inflame the passion of a reasonable person in similar circumstances causing that reasonable person to act for the moment from passion rather than reason, that is, tending for the moment to cause a reasonable person to lose self-control." Having been instructed that "voluntary manslaughter is an intentional homicide that does not include the element of malice aforethought by reason of one or more mitigating factors," the jury nevertheless returned a verdict of guilty on second-degree murder, thereby finding beyond a reasonable doubt that defendant harbored a specific intent to kill, albeit of only a momentary duration. In other words, the state had proven beyond a reasonable doubt that defendant acted with malice.

Having done so, the state necessarily disproved beyond a reasonable doubt that defendant acted in a heat of passion upon adequate provocation. Malice and heat of passion signify two contrary states of mind. To kill with malice, one must act with deliberation. In second-degree murder the deliberation is only momentary; nevertheless, the intent to kill must be formed before the killing itself. *See State v. Martinez*, 59 A.3d 73, 88-89 (R.I. 2013).

Heat of passion, however, requires a loss of self-control. The fatal act is committed out of passion rather than reason. "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Dandridge v. Commonwealth*, 852 S.E.2d 488, 493 (Va. Ct. App. 2021)

(quoting *Canipe v. Commonwealth*, 491 S.E.2d 747, 753 (Va. Ct. App. 1997)).  By proving the existence of the former beyond a reasonable doubt, the state necessarily disproved the existence of the latter beyond a reasonable doubt. *See State v. Hinrichsen*, 877 N.W.2d 211, 227 (Neb. 2016).

"In determining the correctness of a jury charge, 'we determine how a jury composed of ordinarily intelligent persons listening to that instruction at the close of trial would have [interpreted] the instructions as a whole.'" *State v. Parkhurst*, 706 A.2d 412, 418 (R.I. 1998) (quoting *State v. Cipriano*, 430 A.2d 1258, 1262 (R.I. 1981)).  Viewing the instructions in their entirety, we are satisfied that they adequately explained the relevant law and were appropriate.  Notwithstanding the fact that neither defendant nor the state advocated for a finding of voluntary manslaughter, the trial justice determined that such a charge was warranted. *See State v. Esdel*, 317 A.3d 756, 766 (R.I. 2024) ("[I]n determining whether the evidence calls for a lesser-included-offense instruction, the trial justice should * * * consider whether, at the very least, some minimal evidence exists that, if credited by the jury, could support a conviction for the lesser-included offense.") (quoting *State v. Gautier*, 950 A.2d 400, 414 (R.I. 2008) (emphasis omitted)).  We perceive no error in the instructions given, nor in the order in which the jury was to consider each individual charge.  The crime of voluntary manslaughter committed in the heat of passion upon adequate provocation was explained to the jury.  Similar to the

*Hinrichsen* case, "[w]hen [the jury] decided beyond a reasonable doubt that [the defendant] killed with deliberate and premeditated malice, it necessarily also decided beyond a reasonable doubt that the converse was true—i.e., his actions were not the result of a sudden quarrel, done rashly, without due deliberation and reflection." *Hinrichsen*, 877 N.W.2d at 227 (internal quotation marks omitted). Most significantly, the trial justice instructed the jurors, clearly and on multiple occasions, that the state bore the burden to prove the elements of each offense beyond a reasonable doubt:

> "[T]he burden at all times is on the State of Rhode Island to prove to you with competent, credible evidence that this defendant is guilty beyond a reasonable doubt. The defendant never has to prove his innocence. Therefore, if the State fails to establish each and every fact essential to the defendant's guilt of a crime charged because the testimony in support of such element does not satisfy you beyond a reasonable doubt, then you must find the defendant not guilty on that charge.
>
> "* * *
>
> "You should consider all of the circumstances in evidence that you think are relevant in determining whether the State has fulfilled its burden of proving beyond a reasonable doubt that the defendant acted with the required intent or state of mind."

Considering the jury instructions in their entirety, as this Court is compelled to do, we hold that the trial justice adequately described the law, so that a lay jury of ordinary intelligence would have understood it. *See Isom*, 251 A.3d at 6 ("This Court

- 17 -

will not examine a single sentence apart from the rest of the instructions, but rather the challenged portions must be examined in the context in which they were rendered.") (quoting *Ros*, 973 A.2d at 1166).

The trial justice explained all elements required to prove voluntary manslaughter, including what factors, such as heat of passion from adequate provocation, can mitigate the malice aforethought required to commit first-degree or second-degree murder. When taken with the rest of the jury instructions, it is clear that a lay jury of ordinary intelligence would understand that if they found that defendant had not acted with malice, he could not be found guilty of either first- or second-degree murder. It is within the province of the jury alone to make that determination based upon their findings of fact. *See Joplin v. Cassin*, 252 A.3d 271, 281-82 (R.I. 2021) ("It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts.") (quoting *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 35 (1944)). Accordingly, we find that the jury was not misled by the trial justice's instructions and a reversal is not warranted.

Additionally, we are of the opinion that defendant's reliance on *Mullaney* is flawed. On appeal, defendant maintains that *Mullaney* "requires that the prosecution 'prove beyond a reasonable doubt the absence of the heat of passion on sudden

provocation when the issue is properly presented in a homicide case.'" (Quoting *Mullaney*, 421 U.S. at 704.)  Further, defendant argues that "[t]his Court has long since adopted the holding in Mullaney[,]" citing to *State v. McGehearty*, 121 R.I. 55, 394 A.2d 1348 (1978), and *State v. Smith*, 121 R.I. 495, 401 A.2d 41 (1979).

These cases are markedly different from the case at bar, however.  In *McGehearty*, the issue before the Court was whether or not the properly proffered affirmative defense of voluntary intoxication warranted a jury instruction on the prosecution's burden to prove "that defendant was not so intoxicated as to be unable to harbor a specific intention to steal." *McGehearty*, 121 R.I. at 60, 394 A.2d at 1351. Similarly, as the state points out on appeal, *Smith* deals with an affirmative defense issue where "the State merely conceded that it was the 'state's burden to prove, beyond a reasonable doubt, that defendant was not so intoxicated as to be unable to harbor a specific intention to kill.'" (Quoting *Smith*, 121 R.I. at 496, 401 A.2d at 41.) Once again, that was a case involving an affirmative defense and was therefore distinct from the case at bar.  In the case before us, the trial justice clearly instructed the jury that the state bore the burden to prove beyond a reasonable doubt all the elements of the enumerated offenses.

We now turn to the Supreme Court of the United States' own interpretation of *Mullaney*.  Two years after the publication of *Mullaney*, the Supreme Court

- 19 -

"sharply limited"[3] the decision's potential reach in *Patterson v. New York*, 432 U.S. 197 (1977). The Supreme Court recalled that, in *Mullaney*, "[m]alice, as the statute [in question] indicated and as the court instructed, could be implied and was to be implied from 'any deliberate, cruel act committed by one person against another suddenly * * * or without a considerable provocation,' in which event an intentional killing was murder unless by a preponderance of the evidence it was shown that the act was committed 'in the heat of passion, on sudden provocation.'" *Patterson*, 432 U.S. at 212. The Supreme Court further clarified that "*Mullaney* surely held that a State must prove every ingredient of an offense beyond a reasonable doubt, and that it *may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense*." *Id.* at 215 (emphasis added). The Supreme Court went on to explain that, in *Mullaney*, "malice, *i.e.,* lack of provocation, was presumed and could be rebutted by the defendant only by proving by a preponderance of the evidence that he acted with heat of passion upon sudden provocation. * * * [H]owever traditional this mode of proceeding might have been, it is contrary to the Due Process Clause * * *." *Id.* at 216.

As the state points out, however, the *Mullaney* trial court "instructed the jury that 'if the prosecution established the homicide was both intentional and unlawful, malice aforethought (murder) *was to be conclusively implied unless the defendant*

---

[3] Kenneth L. Karst, *The Supreme Court 1976 Term*, 91 Harv. L. Rev. 1, 94 (1977).

*proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation'* * * *."* (Quoting *Mullaney*, 421 U.S. at 686 (emphasis added).)  This presumption is what did not comport with the Due Process Clause, because the state bears the burden to prove each element of the charged crime beyond a reasonable doubt. *See, e.g.*, *State v. Haffner*, 242 A.3d 468, 476 (R.I. 2020). In the case at bar, no such presumptions were made.  As discussed *supra*, the trial justice repeatedly reminded the jury that the state bore the burden to prove each of the elements of each of the charged crimes beyond a reasonable doubt.  At no point was the burden of proof shifted to the defendant.  Accordingly, the defendant's reliance on *Mullaney* is misplaced.

## IV

## Conclusion

For the foregoing reasons, we affirm the judgments of conviction of the Superior Court.  The papers in this case may be remanded to that tribunal.

Justice Robinson did not participate.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Andrew Mangru. |
| **Case Number** | No. 2023-368-C.A. (P1/21-3503AG) <br><br> No. 2023-369-C.A. (P2/22-646ADV) |
| **Date Opinion Filed** | July 15, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kristin E. Rodgers |
| **Attorney(s) on Appeal** | For State: <br><br> Sean P. Malloy <br> Department of Attorney General <br> For Petitioner: <br><br> Megan F. Jackson <br> Rhode Island Public Defender |